40 F.3d 1023
 FIRST PACIFIC BANK; First Pacific Bancorp, Inc.,
Plaintiffs-Appellants,
v.
James E. GILLERAN; California State Banking Department;
Federal Deposit Insurance Corporation, as Receiver
for First Pacific Bank, Defendants-Appellees.
FIRST PACIFIC BANK; First Pacific Bancorp, Inc., Plaintiffs-Appellees,
v.
James E. GILLERAN; California State Banking Department,
Defendants-Appellants.
 Nos. 91-55890, 91-56081.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 15, 1994.
Decided Nov. 21, 1994.
 
 Brant M. Laue, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for plaintiffs-appellants-cross-appellees.
 Joseph M. O'Heron, Deputy Atty. Gen., Los Angeles, CA, for defendants-appellees-cross-appellants.
 Appeals from the United States District Court for the Central District of California.
 Before: WALLACE, Chief Judge, REINHARDT, Circuit Judge, and TANNER,* District Judge.
 WALLACE, Chief Judge:
 
 
 1
 On August 10, 1990, the State of California (State) seized control of First Pacific Bank (Bank) pursuant to California Financial Code (Financial Code) Sec. 3100 because, among other things, it concluded that the Bank's contributed capital was impaired. The State appointed the Federal Deposit Insurance Corporation (FDIC) as receiver for the Bank. In accordance with Financial Code Sec. 3101, the Bank and its owners brought suit in state court to reverse the seizure. The FDIC removed the case to federal district court pursuant to 12 U.S.C. Sec. 1819(b)(2)(B). The district court entered summary judgment confirming the seizure.
 
 
 2
 The Bank now appeals from the district court's summary judgment, and its conclusion that its contributed capital was impaired. The State cross-appeals from an earlier ruling that a capital note should be included in the Bank's contributed capital. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. Sec. 1291. We affirm, but for reasons different than those stated by the district court.
 
 
 3
 * The Bank argues that summary judgment was improper because there was a genuine issue of material fact as to whether its contributed capital was impaired. We review a summary judgment de novo. Jones v. Union Pac. R.R., 968 F.2d 937, 940 (9th Cir.1992). Our tasks on appeal are to determine (1) whether there is a genuine issue of material fact when the evidence is viewed in the light most favorable to the nonmoving party, and (2) whether the district court correctly applied the law. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir.1989). On appeal, we may affirm on any ground supported by the record. United States v. Washington, 969 F.2d 752, 755 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1945, 123 L.Ed.2d 651 (1993).
 
 
 4
 The starting place for our analysis is Financial Code Sec. 134, which provides the statutory definition of contributed capital and the formula for determining whether a bank's contributed capital is impaired. According to section 134(a), contributed capital consists of "all of [the Bank's] shareholders' equity other than retained earnings." Section 134(b) provides that the Bank's contributed capital "shall be deemed to be impaired whenever such bank has deficit retained earnings in an amount exceeding 40 percent of such contributed capital."
 
 
 5
 The Financial Code requires that the impairment analysis be performed using figures for contributed capital and retained earnings that would be presented on a balance sheet prepared in accordance with generally accepted accounting principles (GAAP):
 
 
 6
 All references ... to financial statements, balance sheets ... and all references to assets, liabilities, earnings, retained earnings, shareholders' equity, and similar accounting items of a bank mean such financial statements or such items prepared or determined in conformity with generally accepted accounting principles then applicable, fairly presenting in conformity with generally accepted accounting principles the matters which they purport to present....
 
 
 7
 Cal.Fin.Code Sec. 118 (1978).
 
 
 8
 The State argues that the Bank's own financial statements demonstrate that its contributed capital is impaired, even before they are adjusted to compensate for the overvaluation of the Bank's assets. The record contains at least three sets of calculations that differ in minor amounts because they use figures from three different dates. Each calculation, however, shows that the Bank's contributed capital is impaired. For the sake of simplicity, we will use the figures for August 10, 1990, as found in the Bank's brief on appeal.
 
 
 9
 The Bank's figures show $4,945,880 in contributed capital, consisting of $1,922,865 in common stock and $3,023,015 in additional paid in capital. Forty percent of contributed capital is $1,978,352. The Bank's figures also show $2,700,007 in deficit retained earnings, which exceeds forty percent of contributed capital by $721,655. Thus, according to these figures the Bank's contributed capital was impaired.
 
 
 10
 The Bank argues that these figures are from "interim, unadjusted" statements prepared for internal use that must be adjusted to conform with GAAP. The Bank proposes that: (A) loan loss reserves totaling $1,507,137 and deferred loan fee income totaling $481,587 should be deducted from deficit retained earnings; (B) a capital note worth $844,000 should be included in contributed capital; and (C) deficit retained earnings should be reduced by $390,553 to reflect adjustments necessary to bring the financial statements in line with GAAP.
 
 
 11
 If each of the Bank's proposed adjustments is accepted, its contributed capital of $4,945,880 would be increased by $844,000 to equal $5,789,880. Forty percent of contributed capital would be $2,315,952. Deficit retained earnings of $2,700,007 would be reduced by amounts of $1,507,137, $481,587, and $390,553 to equal $320,730. According to these adjusted figures the Bank's deficit retained earnings would be $1,995,222 below the impairment mark. We address each of the Bank's arguments in turn.
 
 A.
 
 12
 Loan loss reserves are credit accounts on the asset side of the balance sheet, created by accounting entries that have the effect of increasing deficit retained earnings. They are estimates, required by GAAP, to reduce the recorded value of a loan portfolio to account for loans that will become uncollectible in the future. Deferred loan fees are also credit accounts on the asset side of the balance sheet. They represent fees which the Bank has already received, but for which the earnings process is not yet complete. Because the recognition of these fees is deferred, they have the effect of increasing deficit retained earnings.
 
 
 13
 The Bank argues that for purposes of the impairment analysis, its deficit retained earnings should be reduced by $1,507,137 in loan loss reserves and $481,587 in deferred loan fees. However, because the impairment calculation must be performed using contributed capital and deficit retained earnings figures as they would be presented on a balance sheet prepared in accordance with GAAP, these adjustments cannot be made. Cal.Fin.Code Sec. 118 (1978).
 
 
 14
 The Bank contends that the declarations of three certified public accountants, demonstrate that the adjustments can be made consistent with GAAP. Nowhere in these declarations, however, is there a statement that including loan loss reserves and deferred fees in deficit retained earnings is consistent with GAAP.
 
 
 15
 The Bank also argues that the administrative record shows that a state bank examiner had previously included loan loss reserves in deficit retained earnings when calculating the impairment of the Bank's contributed capital. But the Bank has taken this calculation out of context. The bank examiner's calculation was based on adjusted financial statements. Because the adjustments increased deficit retained earnings by over $6 million after writing off uncollectible loans, it was also necessary to reverse the $1.5 million estimated allowance for those same losses. But these adjusted calculations are irrelevant because the State chose to proceed on summary judgment using unadjusted figures.
 
 
 16
 The Bank also argues that loan loss reserves are part of the Bank's capital. This may be true, but it is also irrelevant because capital is not the same as deficit retained earnings.
 
 
 17
 Our conclusion that deficit retained earnings may not be reduced by loan loss reserves is also supported by an understanding of the function of such reserves. Loan loss reserves are established in order to reflect the reality that a loan portfolio is not worth the total outstanding balance of such loans. By establishing a loan loss reserve, a bank effectively reduces the statement of loan values to an estimate of their net realizable value. If a bank's deficit retained earnings are reduced by the amount of its loan loss reserves, the actual financial condition of the bank may be overstated. Therefore, it makes sense not to allow deficit retained earnings to be reduced by the amount of a bank's loan loss reserves.
 
 B.
 
 18
 A capital note is a liability that can be converted into common stock. Therefore it has characteristics of both debt and equity. The Bank successfully argued before the district court that its $844,000 capital note should be considered contributed capital. The State cross-appeals from the district court's ruling in the Bank's favor.
 
 
 19
 The language and structure of the Financial Code indicate that the district court reached an incorrect result. The Financial Code defines contributed capital as "all of shareholders' equity other than retained earnings." Cal.Fin.Code Sec. 134(a) (1978). Thus, in order for a capital note to be contributed capital it must first be an element of shareholders' equity. However, article 4 of the Financial Code, entitled "Shareholders' Equity," considers a capital note to be a liability. Id. Sec. 660 (liabilities include but are not limited to "capital notes or debentures and any contingent liabilities"). The conclusion that capital notes are not part of shareholders' equity is further supported by five sections of the Financial Code that list capital notes and shareholders' equity as separate items. See id. Secs. 670, 763, 1221, 1224, 1231.
 
 
 20
 The Bank contends that the State has recognized the capital note as part of the bank's capital for all purposes. But capital is not the same as contributed capital. See Board of Governors v. First Lincolnwood Corp., 439 U.S. 234, 240 n. 7, 99 S.Ct. 505, 509 n. 7, 58 L.Ed.2d 484 (1978) ("While the Board considers capital notes that are subordinated to depositors' demands to be part of a bank's overall capital, it regards them as a less desirable financial cushion than equity.").
 
 
 21
 The Bank also argues that because a capital note is readily convertible into common stock, GAAP would allow it to be included in contributed capital for purposes of the impairment analysis. However, none of the declarations filed by the Bank's certified public accountants support this conclusion. The most telling declaration is that of John Bovard Miron, who states that "it is appropriate for purposes of the calculation of impaired capital under California Financial Code Section 134(b) that ... the capital notes be added back to GAAP contributed capital." The very strong negative inference is that the capital note is not a part of GAAP contributed capital. The statutory requirement that GAAP contributed capital be used in the impairment analysis negates the suggested propriety of the adjustment. See Cal.Fin.Code Sec. 118 (1978).
 
 
 22
 Our conclusion that the capital note is not a part of shareholders' equity or GAAP contributed capital is confirmed by an analysis of the nature of the financial instrument. As we have already explained, a capital note is a hybrid instrument which has characteristics of both debt and equity. Indeed, that the capital note can mandatorily be converted into common stock and that the principal of the note need not be repaid suggest that the capital note would provide a financial cushion similar to that of equity. The capital note has other features, however, which make it more akin to debt. The capital note requires the Bank to make payments of interest to the holder of the note. In addition, although sections 642 through 645 of the Financial Code restrict a bank's ability to pay dividends and to make other distributions to shareholders on the basis of its earnings and shareholders' equity, the holder of the capital note has a legally enforceable right to interest payments regardless of whether the bank would be prohibited from making distributions to its shareholders. That a bank could be forced to make interest payments on a capital note even while it is encountering financial distress strongly suggests that a capital note is not the equivalent of equity. A capital note clearly provides a less desirable financial cushion than equity, and is properly excluded from shareholders' equity and GAAP contributed capital.
 
 C.
 
 23
 The Bank argues that deficit retained earnings should be reduced by $390,553 to reflect necessary adjustments to the financial statements. The State concedes that adjustments are necessary, but disputes the amount of the adjustments. This issue prompted a series of dueling affidavits in the district court. Ultimately, the district court accepted the State's affidavits, stating that it found the Bank's second declaration "somewhat suspicious."
 
 
 24
 In reviewing the district court's summary judgment, our task "is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Here, however, any genuine issue created by these affidavits does not relate to a material fact. In light of our previous conclusions, the Bank's proposed adjustment would not avert the impairment of its contributed capital.
 
 
 25
 We conclude that the Bank's contributed capital was impaired. The Bank's own figures show contributed capital of $4,945,880, forty percent of which is $1,978,352. The Bank's figures also show $2,700,007 in deficit retained earnings. Even if this figure were reduced by $390,553 to equal $2,309,454, the Bank's contributed capital would still be impaired by $331,102.
 
 II
 
 26
 The Bank argues that summary judgment was improper because it was denied an opportunity to conduct discovery. The State counters that discovery was not necessary because the inquiry was limited to the administrative record. The district court entered summary judgment without ruling on the Bank's pending motion for discovery from the State. "Because the district court did not exercise its discretion, the issue of whether or not it should have presents a legal question which is subject to de novo review." Garrett v. City & County of San Francisco, 818 F.2d 1515, 1518 n. 3 (9th Cir.1987).
 
 
 27
 The State is justified in seizing a bank when the bank's own financial statements demonstrate that its contributed capital is impaired. FDIC v. Bank of San Marino, 167 Cal.App.3d 247, 255, 213 Cal.Rptr. 602 (1985). When, as in this case, the State has relied on the Bank's own financial statements without making any adjustments, the Bank will be hard pressed to show the relevance of any discovery beyond its own records and the State's administrative record.
 
 
 28
 The Bank contends that by the lack of discovery it was denied access to its own records and, therefore, could not determine the extent to which the statements needed to be adjusted to conform with GAAP. However, these records were in the possession of the FDIC, not the State. The Bank did not seek discovery from the FDIC, even though it knew that the FDIC was in exclusive possession of its records. Because the Bank failed to seek discovery from the entity that it knew had its records, we conclude that the district court did not err by entering summary judgment without first ruling on the Bank's motion for discovery.
 
 III
 
 29
 In California, when the State takes possession of a bank, the process that is due to the bank is a "hearing and a determination of the facts upon the merits." Cal.Fin.Code Sec. 3101 (1951). The Bank argues that the summary judgment proceeding was not a sufficient hearing, relying on Trede v. Superior Court, 21 Cal.2d 630, 134 P.2d 745, 747 (A seized institution may challenge the state in "a judicial proceeding in which it may present evidence."), cert. denied, 320 U.S. 739, 64 S.Ct. 39, 88 L.Ed. 438 (1943), and Pacific States Sav. & Loan Co. v. Hise, 25 Cal.2d 822, 155 P.2d 809, 811 (1945) (extensive trial held). These cases do not support the argument that summary judgment violates either section 3101 or due process. If the Bank had been able to establish the existence of a genuine issue of material fact, it would have been entitled to a trial. As it was, the Bank was given the opportunity to present evidence. The district court then properly entered summary judgment on the merits. This is all that is required by section 3101.
 
 
 30
 AFFIRMED.
 
 
 
 *
 Honorable Jack E. Tanner, United States District Judge, Western District of Washington, sitting by designation