64 F.3d 666
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Ray PATTERSON, Plaintiff-Appellant,
v.
Lawrence EAGLEBURGER, Acting Secretary, U.S. Department of
State, Washington, D.C.; Warren Christopher,
Secretary of State, Defendants-Appellees.
 No. 93-56165.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 8, 1995.
Decided Aug. 17, 1995.
 
 Before: WALLACE, Chief Judge, HUG and HAWKINS, Circuit Judges.
 
 MEMORANDUM
 
 1
 Patterson appeals from the district court's summary judgment dismissing his action against the United States of America and Warren Christopher, the Secretary of State (State Department). Patterson filed his action under the Rehabilitation Act of 1973, 29 U.S.C. Secs. 701-795, alleging that the State Department failed to accommodate his handicap in testing for the Foreign Service and refused to hire him because he is handicapped. Summary judgment was based on Patterson's failure to exhaust administrative remedies: he had refused a certified offer of full relief. The principal issues are whether the refusal of a certified offer of full relief constitutes a failure to exhaust administrative remedies precluding litigation of the claim, and, if so, what constitutes an "offer of full relief." The district court had jurisdiction under 28 U.S.C. Sec. 1331. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291.
 
 
 2
 * Patterson is a blind person who applied to the State Department for a position as a Foreign Service Officer. Patterson has taken the written Foreign Service Officer Examination several times. In his 1985 effort, Patterson was provided with Braille materials and an employee who administered and read the examination to him. Patterson alleges that during the examination, the employee continued to perform his regular duties, including talking on the telephone in the same room as the testing took place. The employee then allegedly shortened the amount of time that had been promised to Patterson for the employee's convenience. During the 1986 examination, a proctor was assigned to read the test. Patterson maintains that she at first refused to read, and that when she did read she was insulting and abusive. Patterson was allowed to retake this test in 1987, and was again provided with a reader.
 
 
 3
 Patterson was promised Braille, a reader, and time and a half to take the 1988 examination. But a month before the test, Patterson was informed that he would no longer be accommodated with Braille and a reader. This change resulted from a short-lived policy that the State Department would not hire blind Foreign Service Officers. Patterson managed to take the test by bringing in his own reading device and changing the test site to a location 100 miles away.
 
 
 4
 After the 1988 examination, Patterson filed an administrative complaint alleging discrimination in hiring on the basis of handicap and failure to accommodate handicapped individuals in testing for the Foreign Service. His charge read:
 
 
 5
 On November 9, 1988 I received a letter from Paul Canney of the Board of Examiners. The Foreign Service would no longer provide blind people with Braille text, cassette, or a reader for taking the test. It was also verbalized by the state department's spokesman on about Nov. 30th that the purpose of the changes in the exam for blind people was to exclude them (the blind) from any employment in the foreign service in any overseas position.
 
 
 6
 I would want to see all evidence used by the foreign service in making the Nov. 9, 1988 policy change including names of the task force. I want this policy reviewed and returned to the previous testing rules. I want to be allowed to work overseas as a foreign service officer.
 
 
 7
 (Emphasis in original.) Patterson also submitted a more detailed 14-page affidavit in which he asserts that he is capable of performing the job of Foreign Service Officer and refutes the State Department's justifications for refusing to employ blind individuals in that capacity. In this affidavit, Patterson states: "As a remedy, I want the test policy changed to something reasonable and change the hiring policy to allow blind persons to be hired into the foreign service in all jobs they are able to do."
 
 
 8
 Patterson later wrote a letter to the State Department in which he "reluctantly" set forth "what might be a reasonable settlement" of his case:
 
 
 9
 1. punitive damages of $1,000,000;
 
 
 10
 2. a job commensurate with his experience;
 
 
 11
 3. a full time reader and about $30,000 worth of reading and braille conversion equipment, to be updated as technology improves;
 
 
 12
 4. back-pay for time lost due to the 1988 policy which precluded the entry of blind persons into the Foreign Service;
 
 
 13
 5. written assurances that Foreign Service Officer positions will remain available to qualified blind applicants, and that the testing procedure will allow the use of readers, braille, cassette, and such concessions to the handicap as are necessary.
 
 
 14
 After making these demands, the letter also stated: "I have received no assurance from the Department that I, Ray Patterson, as a blind man will be allowed to take the next Foreign Service Exam using braille, cassette, or reader."
 
 
 15
 The State Department made a counteroffer, certified by the State Department's Equal Opportunities Office under 29 C.F.R. Sec. 163.271 (1994) as an offer of full relief. The proposed settlement agreement contained five principal provisions, summarized as follows:
 
 
 16
 1. the Settlement Agreement shall not be construed as an admission by either party regarding the merits of their positions;
 
 
 17
 2. Patterson agrees to permanently relinquish any claim arising from his application for employment relating to the Department's conduct up to and including the date of the agreement;
 
 
 18
 3. the State Department agrees to schedule Mr. Patterson to take the 1990 Foreign Service written examination and to provide appropriate accommodation in the form of a reader/marker and additional time not to exceed a total of 9 hours. Patterson's examination will be scored on the same basis as all other takers of the 1990 examination, and a decision to invite or not invite him to continue his candidacy will be made according to the same standard applied to all other takers. The Department will bear all costs incurred to provide for the special administration of the examination.
 
 
 19
 4. the State Department agrees to pay for the expenses incurred by Patterson to take the 1988 examination, including the cost of braille test materials, a reading machine, and transportation.
 
 
 20
 5. the State Department agrees to pay Patterson's reasonable attorney's fees.
 
 
 21
 Patterson rejected the offer. He stated that the offer did not address the discriminatory actions that had been taken against him, and complained that the State Department was still treating him differently from other applicants by offering to test him in December instead of in October when the regular testing was scheduled. Along with his letter rejecting the offer, Patterson attached a copy of his previous letter listing his demands.
 
 
 22
 Because Patterson rejected the certified offer of full relief, the State Department cancelled his charge pursuant to 29 C.F.R. Sec. 1613.215 (1994). The State Department explained in its decision that its offer afforded full relief: punitive damages were not included because they are not available under Title VII; written assurances regarding the testing and hiring of other blind applicants was excluded because his was an individual complaint and any remedial action could only address his claim and not a class; and a job, back pay, and accommodation in the form of a reader and various equipment were premature because the written examination is only the first step in a multilevel hiring process. As the State Department decision explained, fewer than 25% of those who take the written examination pass. Even if successful, an applicant must then be successful in a rigorous Oral Assessment Examination, which the large majority of applicants fail. Then the applicant must meet stringent physical standards and pass an extensive background investigation. After meeting all of these requirements, the applicant is placed on a register of applicants eligible for appointment for 18 months. Many of the individuals placed on the register are not "reached" for appointment.
 
 
 23
 Patterson appealed to the Equal Employment Opportunity Commission (EEOC). The EEOC affirmed the State Department's decision, stating that " 'Full relief' is defined as that relief that would have been available to the appellant had he prevailed on every issue in his complaint." The EEOC went on, however, to judge the fulness of the relief offered by reference to the demands made by Patterson in his settlement letter. Its analysis of each of the claims was similar to that of the State Department.
 
 
 24
 Patterson then brought this action in district court. His amended complaint alleges a policy of discrimination in hiring and failure to accommodate in the testing procedures. It prays for a finding of his eligibility for appointment to the Foreign Service; reasonable accommodation in testing that shall include a qualified, competent reader, Braille and cassette copies of the examination (including maps and graphs), a quiet test setting and 12 hours to complete the test; money damages; and attorney's fees.
 
 
 25
 The district court concluded that Patterson had rejected an offer of full relief and had therefore failed to exhaust his administrative remedies. Its analysis of whether the offer provided full relief generally conformed to that of the State Department and the EEOC.
 
 II
 
 26
 The district court's summary judgment is reviewed de novo. First Pacific Bank v. Gilleran, 40 F.3d 1023, 1024 (9th Cir.1994). Our tasks on appeal are to determine (1) whether, viewing the evidence in the light most favorable to the nonmoving party, there is a genuine issue of material fact, and (2) whether the district court correctly applied the law. Id. We may affirm on any ground supported by the record. Id. Because the material facts of this case are not in dispute, our inquiry is limited to a de novo review of the district court's legal conclusions.
 
 
 27
 The Rehabilitation Act of 1973, 29 U.S.C. Secs. 701-794, prohibits discrimination by any federal executive agency or program receiving federal financial assistance against any "otherwise qualified handicapped individual," id. Sec. 794, and places an affirmative obligation on federal agencies to provide reasonable accommodation to otherwise qualified handicapped persons to ensure that they have equal opportunities for job assignment and promotion. Buckingham v. United States, 998 F.2d 735, 739-41 (9th Cir.1993). The Rehabilitation Act also provides successful claimants with the same remedies available under Title VII of the Civil Rights Act of 1964. 29 U.S.C. Sec. 794a(a)(1); Boyd v. United States Postal Service, 752 F.2d 410, 412 (9th Cir.1985). As a result, when Patterson brought his Rehabilitation Act claim against the State Department, he was required to satisfy the requirement of exhaustion of administrative remedies applicable to federal employees under Title VII. Id.
 
 
 28
 Before filing his action against an executive agency in federal court, a Title VII or Rehabilitation Act claimant must first seek relief from the agency itself. Brown v. General Services Administration, 425 U.S. 820, 832 (1976). Once a claimant seeks relief from the agency, he may not bring suit until the administrative remedies are "exhausted." Rivera v. United States Postal Service, 830 F.2d 1037, 1039 (9th Cir.1987), cert. denied, 486 U.S. 1009 (1988). In order to exhaust administrative remedies, Patterson must not only comply with express requirements such as the timely filing of an administrative complaint, but must also participate in good faith in an attempt to resolve the dispute. Wrenn v. Secretary, Dept. of Veterans Affairs, 918 F.2d 1073, 1078 (2d Cir.1990) (Wrenn ), cert. denied, 499 U.S. 977 (1991); Tanious v. IRS, 915 F.2d 410, 411 (9th Cir.1990) (failure to cooperate, including refusal to attend hearing, constitutes failure to exhaust administrative remedies).
 
 
 29
 The Second and Eighth Circuits have held that a necessary corollary of the good faith participation requirement is that a complainant who is offered full relief at the administrative level must either accept the relief offered or abandon the claim and forfeit the right to bring suit in federal court. See Frye v. Aspin, 997 F.2d 426, 428 (8th Cir.1993); Wrenn, 918 F.2d at 1078. As the Second Circuit has explained:
 
 
 30
 The purpose of these statutory prerequisites to bringing a civil action--and the well-established policy of the employment discrimination laws--is to provide an opportunity for the resolution of discrimination complaints by means of "conciliation, conference, and persuasion." 29 U.S.C. Sec. 626(d); see also 42 U.S.C. Sec. 2000e-5(b). This is an important policy of the anti-discrimination laws, and the Supreme Court has accordingly stressed the legislative preference for voluntary conciliation.... The purpose of the good faith participation requirement is to give the administrative process an opportunity to work and to enhance the chances of administrative resolution. It follows that a claimant who is offered full relief in the administrative process must either accept the relief offered or abandon the claim. To allow claimants ... to continue to pursue claims that have been fully remedied during the administrative process would frustrate the congressional policy favoring administrative resolution of complaints for no discernible reason. Continued pursuit of such claims consumes judicial and other resources, resulting in a dead-weight social loss except for giving satisfaction to litigants who prefer court proceedings to administrative relief.
 
 
 31
 Id.
 
 
 32
 Although earlier we had decided to follow this analysis, see Greenlaw v. Garrett, 43 F.3d 462 (9th Cir.1994), that opinion has been withdrawn, and the new opinion follows a different course. As the district court's legal analysis is inconsistent with our latest opinion, we reverse the district court's summary judgment dismissing Patterson's Rehabilitation Act claims for failure to exhaust administrative remedies and the case is remanded to the district court for further proceedings consistent with our opinion in Greenlaw v. Garrett, No. 93-15308, slip. op. 8231 (9th Cir. July 12, 1995).
 
 
 33
 REVERSED AND REMANDED.
 
 
 34
 Note: This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.