43 F.3d 457
 39 ERC 1993, 25 Envtl. L. Rep. 20,371
 WESTLANDS WATER DISTRICT; San Benito County Water District;
San Luis Water District; Panoche Water District,
et al., Plaintiffs-Appellees,
v.
NATURAL RESOURCES DEFENSE COUNCIL; United Anglers of
California; Save San Francisco Bay Association; California
Waterfowl Association; Sierra Club; Bay Institute of San
Francisco; Environmental Defense Fund, et al., Intervenors,
v.
UNITED STATES DEPARTMENT OF INTERIOR; United States
Department of Reclamation; United States Fish and Wildlife
Service; Bruce Babbitt, in his official capacity as the
Secretary of the Interior; United States Department of
Commerce; The National Marine Fisheries Service; and
Ronald Brown, in his official capacity as Secretary of
Commerce, et al., Defendants-Appellants.
WESTLANDS WATER DISTRICT; San Benito County Water District;
San Luis Water District; Panoche Water District,
et al., Plaintiffs-Appellees,
v.
UNITED STATES DEPARTMENT OF INTERIOR; United States
Department of Reclamation; United States Fish and
Wildlife Service, Defendants,
and
Bruce Babbitt, in his official capacity as the Secretary of
the Interior; United States Department of Commerce; The
National Marine Fisheries Service; and Ronald Brown, in his
official capacity as Secretary of Commerce, et al.,
Defendants-Appellants,
and
Natural Resources Defense Council; United Anglers of
California; Save San Francisco Bay Association; California
Waterfowl Association; Sierra Club; Bay Institute of San
Francisco; Environmental Defense Fund, et al.,
Defendants-Intervenors-Appellants.
WESTLANDS WATER DISTRICT; San Benito County Water District,
Plaintiffs-Appellees,
v.
UNITED STATES DEPARTMENT OF INTERIOR; United States
Department of Reclamation; United States Fish and
Wildlife Service, Defendants,
v.
GRASSLAND WATER DISTRICT; and Grassland Resource
Conservation District, Defendants-Intervenors-Appellants.
 Nos. 94-16092, 94-16108 and 94-16149.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 16, 1994.
Decided Dec. 21, 1994.
 
 Andrea Nervi Ward, U.S. Dept. of Justice, Washington, DC, for defendants-appellants.
 Thomas W. Birmingham & William T. Chisum, Kronick, Moskovitz, Tiedemann & Girard, Sacramento, CA, for plaintiffs-appellees.
 Brian E. Gray, San Francisco, CA, for defendants-intervenors-appellants Nat. Resources Defense Council, et al.
 Daniel L. Cardozo, Adams & Broadwell, South San Francisco, CA, for defendants-intervenors-appellants Grassland Water Dist. and Grassland Resource Conservation Dist.
 David J. Guy, California Farm Bureau Federation, Sacramento, CA, for amicus curiae.
 Appeals from the United States District Court for the Eastern District of California.
 Before: CHOY, FARRIS, and BRUNETTI, Circuit Judges.
 FARRIS, Circuit Judge:
 
 
 1
 Several water districts seek to enjoin the implementation of sections 3406(b)(2) and (d)(1) of the Central Valley Project Improvement Act. They contend that the Secretary of Interior must first complete an environmental impact statement as required by NEPA. The district court granted the water districts' motion for a preliminary injunction. The Secretary and environmental defendants appeal. We have jurisdiction pursuant to 28 U.S.C. Sec. 1292(a)(1) and vacate the preliminary injunction.
 
 I. BACKGROUND
 
 2
 California's Central Valley is one of the most fertile agricultural regions in the United States. Several state and federal water projects, including the federal Central Valley Project, make this agricultural productivity possible by diverting water from streams that flow out of the Sierra mountains. These water projects produce many agricultural and economic benefits, but the water diversions harm wildlife habitats and ecological resources. In addition, agricultural water users consume most of California's developed water yet comprise only a small fraction of California's population. As urban populations continue to grow, urban water users are demanding more water. In 1992, Congress enacted the Central Valley Project Improvement Act, Pub.L. No. 102-575, title 34, 106 Stat. 4706. The Act reallocates a portion of federal reclamation water away from farmers to rehabilitate environmental and wildlife resources, and makes more water available to urban areas through water transfers.
 
 
 3
 Agricultural water users have filed two lawsuits to prevent the implementation of the CVPIA. In a companion case, O'Neill v. United States, No. 93-17154, farmers allege, among other things, that the CVPIA violates water service contracts between the United States and Westlands Water District. In this case, Westlands and other local water districts seek to enjoin implementation of sections 3406(b)(2) and (d)(1), two of the CVPIA's fish and wildlife provisions. They contend that implementation would violate the National Environmental Policy Act, 42 U.S.C. Sec. 4332 (1988). The district court granted their motion for a preliminary injunction, holding that (1) the water districts were likely to succeed in their NEPA claim and (2) the harm to the water districts would outweigh the harms cited by the Secretary and environmental defendants.
 
 II. DISCUSSION
 
 4
 The water districts are entitled to a preliminary injunction if they demonstrate (1) a likelihood of success on the merits and a possibility of irreparable injury or (2) the existence of serious questions on the merits and a balance of hardships tipping in their favor. National Wildlife Fed'n v. Burlington N. R.R., 23 F.3d 1508, 1510 (9th Cir.1994). The two tests are not separate but represent a sliding scale in which the required probability of success on the merits decreases as the degree of harm increases. Oakland Tribune, Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1376 (9th Cir.1985). If the public interest is involved, the district court must also determine whether the public interest favors the water districts. Fund For Animals, Inc. v. Lujan, 962 F.2d 1391, 1400 (9th Cir.1992). We review the legal issues underlying the district court's preliminary injunction de novo. Miller v. California Pac. Medical Ctr., 19 F.3d 449, 455 (9th Cir.1994) (en banc).
 
 
 5
 The water districts make three arguments why NEPA should apply to the CVPIA: Sections 3406(b)(2) and (d)(1) of the CVPIA are not in conflict with NEPA; even if these sections conflict with NEPA, section 3406(b) overrides the language in sections 3406(b)(2) and (d)(1); and section 3409 does not exempt the CVPIA from NEPA compliance.A. IRRECONCILABLE CONFLICT BETWEEN NEPA AND SECTIONS 3406(b)(2) & 3406(d)(1) OF THE CVPIA
 
 
 6
 NEPA directs that, "to the fullest extent possible ... public laws of the United States shall be interpreted and administered in accordance with [NEPA]." 42 U.S.C. Sec. 4332 (1988). We give NEPA the broadest possible interpretation. Jones v. Gordon, 792 F.2d 821, 826 (9th Cir.1986). Only if there is an "irreconcilable" conflict between the statute and NEPA will the requirements of NEPA not apply. Id. An irreconcilable conflict is created if a statute mandates a fixed time period for implementation and this time period is too short to allow the agency to comply with NEPA. See Flint Ridge Development Co. v. Scenic Rivers Ass'n, 426 U.S. 776, 791, 96 S.Ct. 2430, 2439, 49 L.Ed.2d 205 (1976) (holding that NEPA does not apply because Secretary of Housing had an obligation to allow real estate records to go into effect 30 days after filing). If, however, the statute "does not require [implementation] within any particular period," NEPA will be applicable. Jones, 792 F.2d at 826.
 
 
 7
 The Secretary and environmental appellants contend that sections 3406(b)(2) and (d)(1) irreconcilably conflict with NEPA, and therefore the Secretary may implement those sections without first conducting an environmental impact statement. Section 3406(b)(2) provides:
 
 
 8
 [U]pon enactment of this title [the Secretary of Interior shall] dedicate and manage annually eight hundred thousand acre-feet of Central Valley Project yield for the primary purpose of implementing the fish, wildlife, and habitat restoration purposes and measures authorized by this title ...
 
 
 9
 106 Stat. at 4715. Section 3406(d)(1) directs the Secretary "[u]pon enactment of this title" to deliver a specified amount of water to wetlands within the Central Valley. 106 Stat. at 4722-23.
 
 
 10
 Giving the phrase "upon enactment of this title" its plain meaning, Farr v. United States, 990 F.2d 451, 455 (9th Cir.1993), an irreconcilable conflict exists between NEPA and sections 3406(b)(2) and (d)(1). The phrase means that implementation is triggered by enactment. Unlike Jones and even other sections within the CVPIA, Congress did not give the Secretary discretion over when he may carry out his duties under these sections. See, e.g., Sec. 3406(b)(1), 106 Stat. at 4714-15 (giving the Secretary three years to develop a plan that will develop sustainable anadromous fish populations in Central Valley rivers and streams); Sec. 3406(b)(4), 106 Stat. at 4717 (instructing the Secretary to "develop and implement a program to mitigate for fishery impacts associated with operations of the Tracy Pumping Plant").
 
 
 11
 This interpretation of sections 3406(b)(2) and (d)(1) is consistent with other sections in the CVPIA. Under section 3409, the Secretary must complete a programmatic EIS studying fish and wildlife restoration actions and the cumulative affect of renewing all water service contracts. While sections 3406(b)(2) and (d)(1) require implementation of fish and wildlife actions "upon enactment," the language pertaining to renewal of water service contracts is strikingly different:
 
 
 12
 No such renewals [of existing long-term contracts] shall be authorized until appropriate environmental review, including the preparation of the environmental impact statement required in section 3409 of this title, has been completed.
 
 
 13
 Sec. 3404(c)(1), 106 Stat. at 4709. The contrasting text of the CVPIA indicates that Congress intended for the Secretary to implement the fish and wildlife provisions in sections 3406(b)(2) and (d)(1) before the completion of the programmatic three-year EIS.
 
 
 14
 The water districts argue that sections 3406(b)(2) and (d)(1) are reconcilable with NEPA. First, they point out that section 3406(b) requires compliance with all state and federal laws "immediately upon enactment," while sections 3406(b)(2) and (d)(1) apply only "upon enactment." Thus, the water districts contend that the Secretary must follow the mandates of section 3406(b) before the other sections. We understand but reject the argument. "Immediately upon enactment" and "upon enactment" are interchangeable terms as used here--"immediately" adds nothing to the requirement "upon enactment."The water districts also assert that, notwithstanding the "upon enactment" language, the Secretary has other statutory obligations with which he must comply before implementing sections 3406(b)(2) and (d)(1). Because of these statutory obligations, the water districts argue it is reasonable to infer that the Secretary must also comply with NEPA before implementation. For example, section 3411(a) states:
 
 
 15
 Notwithstanding any other provision of this title, the Secretary shall, prior to the reallocation of water from any purpose of use or place of use specified within applicable Central Valley Project water rights permits and licenses to a purpose of use or place of use not specified within said permits or licenses, obtain a modification in those permits and licenses, in a manner consistent with the provisions of applicable State law, to allow such change in purpose of use or place of use.
 
 
 16
 106 Stat. at 4731. Because the federal government owns the Central Valley Project, the federal government holds water rights to California water. Under California water law, every water right permit restricts the location and use of that water. If a water user wishes to change either the location or use of that water, he must file a change application with the California Water Resources Control Board. Cal. Water Code Secs. 1700-1707 (West 1971 & Supp.1994) In short, section 3411(a) restates the requirements of California water law.
 
 
 17
 The water districts suggest that section 3411(a) will prevent the Secretary from immediately implementing sections 3406(b)(2) and (d)(1) because only three of the Bureau of Reclamation's water permits provide for fish and wildlife use. This argument is based on a faulty premise. The Bureau's three permits provide ample water to implement sections 3406(b)(2) and (d)(1).[1] Consequently, section 3411(a) will not delay the Secretary's implementation of these sections.
 
 
 18
 Finally, the water districts argue that the Secretary must consult with various federal and state agencies and affected interests before implementing the water reallocation provisions. We agree, but consultation requires only minimal written communications. See State of Cal. v. Watt, 683 F.2d 1253, 1269 (9th Cir.1982) (affirming district court decision that letter by Governor Brown and response by Secretary Watt satisfied the consultation requirements of 43 U.S.C. Sec. 1345(c)), rev'd in part 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984). The consultation requirement does not provide sufficient time for the Secretary to conduct an EIS.
 
 
 19
 B. CONFLICT BETWEEN SECTION 3406(b) AND SECTIONS 3406(b)(2) & 3406(d)(1)
 
 
 20
 Rather than ruling that sections 3406(b)(2) and (d)(1) do not conflict with NEPA, the district judge concluded that Congress intended for NEPA to apply to the CVPIA. He relied on section 3406(b) of the CVPIA, which provides: "The Secretary, immediately upon the enactment of this title, shall operate the Central Valley Project to meet all obligations under State and Federal law, including but not limited to the Federal Endangered Species Act, 16 U.S.C. 1531, et seq...." 106 Stat. at 4714. The district court concluded that section 3406(b) reflects Congress' intent and overrides the phrase "upon enactment of this title" in sections 3406(b)(2) and (d)(1).
 
 
 21
 We disagree. The usual rule is that "the specific governs the general." Morales v. Trans World Airlines, Inc., --- U.S. ----, ----, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992); see also Hellon & Assocs. v. Phoenix Resort Corp., 958 F.2d 295, 297 (9th Cir.1992) (stating that if two statutes conflict, a later and specific statute usually controls an earlier and more general statute). The language in section 3406(b) is a general directive to abide by all laws when implementing the CVPIA. The critical phrase in sections 3406(b)(2) and (d)(1), found in only two of approximately thirty subsections of section 3406, is a specific directive calling for immediate implementation.
 
 
 22
 "The cardinal principle of statutory construction is to save and not to destroy. It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section...." Estate of Reynolds v. Martin, 985 F.2d 470, 473 (9th Cir.1993) (quotation omitted). If section 3406(b) were to govern the interpretation of the statute, it "would effectively write [the phrase in sections 3406(b)(2) and (d)(1) ] out of the Act." American Textile Mfrs. Inst. v. Donovan, 452 U.S. 490, 513, 101 S.Ct. 2478, 2492, 69 L.Ed.2d 185 (1981).
 
 
 23
 The water districts could have argued that the reverse must also be true: If the language in sections 3406(b)(2) and (d)(1) controls, that writes section 3406(b) out of the Act. That argument would overlook the fact that NEPA does not apply to every statute. It only applies to the "fullest extent possible." Thus, the Secretary may immediately implement sections 3406(b)(2) and (d)(1) and still be in full compliance with section 3406(b). In addition, section 3409 explicitly creates a three-year timetable for NEPA compliance. Congress has given the Secretary a means to implement the statute and to comply with NEPA requirements.
 
 C. INTERPRETATION OF SECTION 3409
 
 24
 The water districts contend that the legislative history of section 3409 does not exempt the CVPIA from NEPA compliance. We reject this argument. If the words of a statute are clear, we need not consult legislative history. Stanton Rd. Assocs. v. Lohrey Enters., 984 F.2d 1015, 1019 (9th Cir.1993). The plain meaning of section 3409 reconciles NEPA compliance with the language in sections 3406(b)(2) and (d)(1).
 
 
 25
 Furthermore, the district court relied on legislative history of the Central Valley Project Reform Act (H.R. 5099). Although H.R. 5099 was the predecessor to the CVPIA, the two statutes are different.[2] The legislative history of H.R. 5099 cannot be transferred to the CVPIA.
 
 III. CONCLUSION
 
 26
 Sections 3406(b)(2) and (d)(1) create an irreconcilable conflict with the requirements of NEPA. The water districts have shown neither a likelihood of success nor the existence of a serious question on the merits. We do not consider the balance of hardships. Nor do we consider whether the fish and wildlife provisions of the CVPIA are exempt from NEPA requirements. See American Motorcyclist Ass'n v. Watt, 714 F.2d 962, 966 (9th Cir.1983) (holding public interest does not favor granting an injunction where "government action allegedly in violation of NEPA might actually jeopardize natural resources").
 
 
 27
 The temporary injunction is VACATED.
 
 
 
 [1]
 Permit No. 16597 provides for the storage of 980,000 acre-feet per year. Permit No. 16600 provides for the storage of 1,420,000 acre-feet per year. Permit no. 11969 provides for storage of 1,800,000 acre-feet per year (for "fish and wildlife propagation"). The total amount of water required to implement sections 3406(b)(2) and (d)(1) is approximately 976,000 acre-feet per year. (This assumes a normal water year. In drought years, the total amount of water required by sections 3406(b)(2) and (d)(1) would be approximately 730,000 acre-feet per year.)
 
 
 [2]
 Section 4 of H.R. 5099 governed the extension of long-term water service contracts. Section 4(c) mandated that before renewing an individual contract, the Bureau must first conduct an EIS. Section 4(d) required the Bureau to conduct a programmatic EIS within three years to study the cumulative affects of renewing all existing CVP water contracts. Finally, section 4(e) gave the Bureau the authority to revise any water service contracts it had renewed prior to the completion of the programmatic EIS, based on modifications required by the programmatic EIS. Section 4(d) became section 3409 of the CVPIA, but Congress added an analysis of "all fish, wildlife, and habitat restoration actions" to the CVPIA's programmatic EIS. The district court cited the legislative history to section 4(e) when ruling that Congress intended for NEPA to apply to the CVPIA