**ENVIRONMENTAL DEFENSE CENTER, a non-profit corporation, Plaintiff–Appellee,**

v.

**Bruce BABBITT, Secretary of the Interior; Mollie Beattie, Director, U.S. Fish and Wildlife Service, Defendants–Appellants.**

No. 95–56255.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1995.

Decided Dec. 11, 1995.

Neil Levine, Environmental Defense Center, Santa Barbara, California, for plaintiff-appellee.

Lynn Penman, United States Department of Justice, Washington, D.C., for defendants-appellants.

Before: FLETCHER, CANBY and HAWKINS, Circuit Judges.

FLETCHER, Circuit Judge:

Defendants Bruce Babbitt, Secretary of the Interior, and Mollie Beattie, Director of

the Fish and Wildlife Service (collectively "the Secretary"), appeal from the district court's grant of summary judgment in favor of the plaintiff, Environmental Defense Center ("EDC"), in EDC's action to compel the Secretary to make a final determination on a petition to list the California red-legged frog as an endangered species pursuant to the Endangered Species Act. The Secretary admits that he failed to make a final determination on the red-legged frog by the statutory deadline. He contends, however, that he currently is unable to do so because Public Law 104–06 rescinds funding for the making of a final determination that a species is endangered. Although we agree with the district court that the appropriations rider does not repeal or modify the Endangered Species Act, we find that the Secretary currently is unable to comply with his listing duty under the Act due to the unavailability of funds. Therefore, we vacate and remand for the district court to modify its order and judgment so that the Secretary's compliance is delayed until a reasonable time after appropriated funds are made available.

## I.

The history of the petition to list the California red-legged frog as an endangered species and the Secretary's repeated failures to take timely action in this case are undisputed.

Congress enacted the Endangered Species Act of 1973 ("ESA"), as amended, 16 U.S.C. §§ 1531–1544, to ensure the protection and conservation of threatened and endangered species. 16 U.S.C. § 1531(b). The ESA requires the Secretary of Interior to promulgate by regulation a list of those species which are either threatened or endangered, according to specified statutory criteria. *Id.* § 1533(a)(1).

Drs. Mark R. Jennings, Marc P. Hayes, and Dan C. Holland filed a petition to list the California red-legged frog as an endangered species. Section 4 of the ESA sets forth a time-table for taking action on species petitioned for listing. Within twelve months of receiving a petition that presents substantial information, the Secretary must determine and publish a finding that the listing is warranted, that it is not warranted, or that it is warranted but precluded due to work on other pending listing proposals. *Id.* § 1533(b)(3)(B).

In this case, the Secretary failed to meet the 12–month statutory deadline. Consequently, EDC filed suit. On July 19, 1993, the Secretary published a finding on the petition to list the California red-legged frog. 58 Fed.Reg. 38553 (July 19, 1993). EDC dismissed the suit pursuant to a settlement agreement which required the Secretary to publish a proposed rule to implement the listing of the California red-legged frog by November 1, 1993.

The Secretary failed to meet the November 1, 1993 deadline. EDC filed a second suit in January 1994 to compel the Secretary to publish a proposed rule. On February 2, 1994, the Secretary published a proposed rule that the red-legged frog be listed as an endangered species. 59 Fed.Reg. 4888–95 (February 2, 1994).

The Secretary must act on a proposed rule within one year of the date of its publication. *Id.* § 1533(b)(6)(A). He must either promulgate a final rule, withdraw the proposed rule if he finds there is insufficient scientific information to justify a listing action, or extend the one-year period by six months. *Id.* The February 2, 1994 publication of the proposed rule to list the California red-legged frog as an endangered species makes February 2, 1995 the date for the required publication. The Secretary concedes that he failed to meet this statutory deadline as well.

On May 1, 1995, EDC filed the instant suit to compel the Secretary to make and publish a final determination. EDC would prevail except for the fact that between the time the Secretary failed to meet the deadline and the time EDC filed suit, Congress passed an appropriations bill which precluded the expenditure of fiscal year 1995 funds on specified activities under the ESA. Public Law

No. 104–06, 109 Stat. 73, 86 (April 10, 1995). Public Law No. 104–06 provides that

Of the funds made available under this heading in Public Law 103–332 [1]—

(1) $1,500,000 are rescinded from the amounts available for making determinations whether a species is a threatened or endangered species and whether habitat is critical habitat under the Endangered Species Act of 1973 (16 U.S.C. § 1531 et seq.); and

(2) *none of the remaining funds appropriated under that heading may be made available for making a final determination that a species is threatened or endangered* or that habitat constitutes critical habitat (except a final determination that a species previously determined to be endangered is no longer endangered but continues to be threatened).

To the extent that the Endangered Species Act of 1973 has been interpreted or applied in any court order (including an order approving a settlement between the parties to a civil action) to require the making of a determination respecting any number of species or habitats by a date certain, that Act shall not be applied to require that the determination be made by that date if the making of the determination is made impracticable by the rescission made by the preceding sentence.

109 Stat. 73, 86 (emphasis added).

The parties filed cross-motions for summary judgment before the district court. The district court granted EDC's motion, ordering that "the Secretary shall take his final action on the California red-legged frog listed in the petition by September 15, 1995."

The district court and this court denied the Secretary's motions for a stay pending appeal. The Supreme Court granted a stay until October 31, 1995. This court has expedited the appeal and extended the stay pending ruling on the appeal.

The 1995 fiscal year ended as of September 30, 1995, and a continuing resolution was signed on September 30, 1995. Section 104 of the resolution continued the moratorium on funding contained in Public Law No. 104–06 through November 13, 1995. H.J.Res. 108 (September 30, 1995) ("No appropriation or funds made available ... shall be used to initiate or resume any project or activity for which appropriations, funds, or other authority were not available during the fiscal year 1995."). After the resolution lapsed, the government operated without a budget until November 20, 1995.[2] On November 20, 1995, a new continuing resolution was signed into law which will remain in effect until December 15, 1995 or until an appropriation is determined for the specific project or activity identified in the continuing resolution. H.J.Res. 123 § 106 (Nov. 20, 1995). Section 104 of the resolution continues the moratorium on funding contained in Public Law No. 104–06. *Id.* § 104.[3]

## II.

The Secretary contends that taking final action on the California red-legged frog listing proposal would necessarily require the use of previously appropriated funds, in direct violation of Public Law No. 104–06 and the current resolution continuing the moratorium on funding. He contends that the appropriations rider to some degree effects a substantive repeal of the final listing provisions of the ESA.

EDC responds that legislating by implication through appropriations riders is disfavored. It contends that the rider in no way

---

1. Public Law No. 103–332, which was passed in August 1994, provided the appropriations for the Department of Interior's Fiscal Year 1995.

2. During this period, the Secretary could not take final action on the California red-legged frog due to the unavailability of appropriated funds unless he deemed such an action essential under his emergency powers. *See* 31 U.S.C. §§ 1341–1342.

3. Like the September 30, 1995 resolution, the current resolution provides that funds may be made available only for activities for which appropriations were available in 1995 and for which appropriations would be available in the 1996 Appropriations Act. *Id.* § 101. Appropriations for final listings of endangered species were not available at the end of fiscal year 1995, due to Public Law No. 104–06, and are not available in the 1996 appropriations bills for the Department of the Interior passed by either the House or the Senate. *See* H.R.1977, 141 Cong.Rec. H7135 (daily ed. July 18, 1995) (House); 141 Cong.Rec. S12037 (daily ed. Aug. 9, 1995) (Senate).

repeals the Secretary's preexisting statutory duty to make a final listing of the California red-legged frog. EDC asserts that the rider does not prohibit the Secretary from taking final action on the red-legged frog petition because the deadline for taking final action predated enactment of the rider.

We agree with EDC that the rider does not repeal the Secretary's listing duty under the ESA. We agree with the Secretary, however, that the rider prevents him from taking final action on the petition at this time.

### A.

In determining whether Congress intended the appropriations rider to repeal or modify the listing provisions of the Endangered Species act, we focus on the language of the rider. *United States v. Aguilar,* 21 F.3d 1475, 1480 (9th Cir.1994) (primary indication of congressional intent is language of the statute), *aff'd in part and rev'd in part on other grounds,* — U.S. —, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). To the extent the language is ambiguous, we look to the legislative history. *Id.*

■ Repeal of legislation by implication is disfavored. *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 190, 98 S.Ct. 2279, 2299–2300, 57 L.Ed.2d 117 (1978). This rule "applies with even *greater* force when the claimed repeal rests solely in an Appropriations Act." *Id.* (emphasis in original). Only a "clear repugnance" between the previous legislation and the appropriations bill warrants a finding that Congress intended to repeal the previous legislation. *In re Glacier Bay,* 944 F.2d 577, 581 (9th Cir.1991).

■ The ESA provides that the Secretary "shall" act on a proposed rule to list a species as endangered within one year of the date of its publication. 16 U.S.C. § 1533(b)(6)(A). He shall either promulgate a final rule, withdraw the proposed rule if he finds there is insufficient scientific information to justify a listing action, or, if necessary, extend the one-year period. *Id.* This is a mandatory, nondiscretionary duty which may be enforced by citizen suit. *Id.* § 1540(g).

■ The appropriations rider does not remove this statutory duty; instead, it only temporarily removes the funds available for carrying out the duty. The rider provides that "none of the remaining funds appropriated under that heading may be made available for making a final determination that a species is threatened or endangered." 109 Stat. 73, 86. By its terms, however, it does not prohibit the Secretary from making a final determination.

■ Because it is clear from the language of the rider that it does not repeal the listing provisions of the Endangered Species Act, we need not look beyond the language to the legislative history. *Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1547–48, 79 L.Ed.2d 891 (1984); *Coalition for Clean Air v. Southern California Edison Co.,* 971 F.2d 219, 227 (9th Cir.1992), *cert. denied,* 507 U.S. 950, 113 S.Ct. 1361, 122 L.Ed.2d 740 (1993). In any event, the legislative history is not to the contrary. *See* 141 Cong.Rec. H4323, H4328 (daily ed. April 5, 1995); 141 Cong. Rec. S4028–S4035 (daily ed. March 16, 1995). Accordingly, we find that the appropriations rider does not repeal or modify the listing provisions of the Endangered Species Act.

### B.

■ Although the appropriations rider does not repeal the Secretary's duty to make a final determination whether the California red-legged frog is endangered, the rider (and the budget resolution continuing the rider's moratorium on funding) necessarily restrict the Secretary's ability to comply with this duty by denying him funding.

The Secretary admits that he has completed the necessary scientific studies and field work to make a final determination. The only action that apparently remains to be taken is in-house review and decisionmaking. However, even though completion of the process may require only a slight expenditure of funds, we agree with the Secretary that taking final action on the California red-legged frog listing proposal would necessarily require the use of appropriated funds. The use of any government resources—whether

salaries, employees, paper, or buildings—to accomplish a final listing would entail government expenditure. The government cannot make expenditures, and therefore cannot act, other than by appropriation. 31 U.S.C. §§ 1341–1342. Pursuant to Public Law No. 104–06, no appropriated funds are available to the Secretary to make a final listing that a species is disabled.[4] Accordingly, the Secretary may not take final action on the California red-legged frog listing proposal at this time.

### III.

We agree with the district court that the Secretary violated his nondiscretionary duty to take final action on the California red-legged frog by February 2, 1995. We also agree that the appropriations rider does not repeal or modify the Secretary's listing duty under the Endangered Species Act. Nonetheless, we find that lack of available appropriated funds prevents the Secretary from complying with the Act. Accordingly, we must vacate and remand to the district court to modify its order and judgment to provide that compliance with the requirement that the Secretary make a final determination as to the endangered status of the California red-legged frog is delayed until a reasonable time after appropriated funds are made available, the time to be specified by the district court. The panel will retain jurisdiction over any further appellate proceedings in this matter. The mandate shall issue forthwith.

VACATED AND REMANDED.

---

4. Contrary to EDC's suggestion, the rider does not differentiate between final listings for which the statutory deadline has passed and final listings for which the deadline has not passed. 109 Stat. 73, 86. The only distinction made is for preexisting *court orders* requiring a final determination by a date certain. *Id.* Here, there was no preexisting court order requiring the Secretary to take final action on the red-legged frog by a date certain.