MARBLED MURRELET (BRACHY-RAMPHUS MARMORATUS), et al., Plaintiffs,

v.

Bruce BABBITT, in his official capacity as Secretary of the Interior, et al., Defendants.

No. C91–522BR.

United States District Court, W.D. Washington.

Feb. 29, 1996.

---

Brian C. Kipnis, U.S. Attorney's Office, Seattle, WA, Richard B. Stewart, U.S. Department of Justice, Environment and Natural Resources Div., Washington, DC, Diane M. Connolly, Christiana P. Perry, U.S. Department of Justice, Land and Natural Resources Division, Washington, DC, for Manuel Lujan, John F. Turner, Marvin Plenart, United States Fish & Wildlife Service.

William F. Lenihan, Schwabe Williamson Ferguson & Burdell, Seattle, WA, for Manke Lumber Company, Inc.

Peter McNaughton Vial, McNaul, Ebel, Nawrot, Helgren & Vance, Seattle, WA, for Hoh River Timber Co.

Mark C. Rutzick, Law Offices of Mark C. Rutzick, Portland, OR, for Mayr Brothers Logging Co., Inc., Washington Contract Loggers Association, Spalding & Sons, Inc., Gregory A. Miller, A. Troy Reinhart, NW Forest Resource Council.

William F. Lenihan, Schwabe Williamson Ferguson & Burdell, Seattle, WA, David Dun, Dun & Martinek, Eureka, CA, for Sierra Pacific Industries.

Robert Farnum Bakemeier, Bogle & Gates P.L.L.C., Seattle, WA, for California Forestry Association, Eel River Sawmills, Miller Timber Co., Pacific Lumber Co.

## ORDER DENYING FEDERAL DEFENDANTS' MOTION TO VACATE 7/6/95 ORDER REQUIRING FINAL HABITAT DESIGNATION BY 1/26/96

ROTHSTEIN, District Judge.

THIS MATTER comes before the court on a motion by federal defendants to vacate a prior court order. Having reviewed the motion together with all documents filed in support and in opposition,[1] and being fully advised, the court finds and rules as follows:

## I. BACKGROUND

According to the Endangered Species Act (ESA), 16 U.S.C. § 1533(b)(6)(C), federal defendants had a nondiscretionary duty to designate critical habitat for the threatened marbled murrelet by June 22, 1993. Federal

Kristen L. Boyles, Todd D. True, Sierra Club Legal Defense Fund, Seattle, WA, for Marbled Murrelet, Oregon Natural Resources Council, Pilchuck Audobon Society, Portland Audubon Society, North Cascades Audubon Society, Cape Arago Audubon Society, Redwood Region Audubon Society.

1. The court grants plaintiffs' motion for leave to file a supplemental surreply brief.

defendants failed to comply with this requirement.

On November 2, 1993, pursuant to plaintiffs' motion, this court ordered federal defendants to propose designated critical habitat for the marbled murrelet by January 21, 1994, and to "make a final designation of critical habitat as soon as reasonably possible under applicable law." Order Granting Plaintiffs' Motion for Order Compelling Designation of Critical Habitat at 3. Federal defendants published a proposed critical habitat designation for the marbled murrelet on January 27, 1994.

On July 6, 1995, again pursuant to plaintiffs' motion, this court issued an order requiring federal defendants to make a final designation of critical habitat for the marbled murrelet by January 29, 1996. Federal defendants now move this court for an order vacating the order of July 6, 1995 on the grounds that Congress has recently enacted legislation which prevents them from meeting the court-ordered deadline.

## II. EFFECT OF LEGISLATIVE RIDER

The legislation in question is a rider to an unrelated emergency appropriations bill, which provides:

Of the funds made available under this heading in Public Law 103–332—

(1) $1,500,000 are rescinded from the amounts available for making determinations whether a species is a threatened or endangered species and whether habitat is critical habitat under the Endangered Species Act of 1973 (16 U.S.C. § 1531 et seq.); and (2) none of the remaining funds appropriated under that heading may be made available for making a final determination that a species is threatened or endangered or that habitat constitutes a critical habitat (except a final determination that a species previously determined to be endangered is no longer endangered but continues to be threatened).

To the extent that the Endangered Species Act of 1973 has been interpreted or

applied in any court order (including an order approving a settlement between the parties to a civil action) to require the making of a determination respecting any number of species or habitats by a date certain, that Act shall not be applied to require that the determination be made by that date if the making of the determination is made impracticable by the rescission made by the preceding sentence.[2]

Pub.L. No. 104–6, 109 Stat. 73, 86 (1995).

In their opening brief, federal defendants maintained that Congress had temporarily repealed the ESA provisions governing final listing of endangered species. In light of the ruling to the contrary in *Environmental Defense Center v. Babbitt*, 73 F.3d 867, 871 (9th Cir.1995), federal defendants are no longer pursuing this argument.

■ Federal defendants assert that, although the ESA listing provisions are still in effect, the rider categorically prohibits federal defendants from spending funds to meet the court-ordered deadline for completing the final critical habitat determination for the marbled murrelet by January 29, 1996. Plaintiffs respond that, since a court order is involved in this case, the plain language of the law requires federal defendants to comply with the requirements of the ESA as construed by this court unless "impracticable."

Having carefully reviewed the parties' arguments and the language of the law, the court concludes that plaintiffs are correct. The clear and unambiguous language of the rider provides that, in cases involving an existing court order requiring final designation of critical habitat, federal defendants must comply with the order unless they establish that "the making of the determination is made impracticable." *Cf., Silver v. Babbitt*, No. 94–337 PHX CAM (D.Ariz. May 19, 1995) at p. 6. Federal defendants' contention that the second sentence of the rider applies only to non-final ESA actions with court-ordered deadlines and not to final determinations has no support in the plain language of the rider.

**2.** While the rider itself was only effective until October 1, 1995, Congress has since passed several continuing resolutions containing the same

language. Thus, the same restrictions are still applicable now.

■ Federal defendants invoke allegedly contradictory legislative history. But when the language of the legislation itself is clear, there is no need to refer to legislative history. *See Westlands Water District v. Natural Resources Defense Council*, 43 F.3d 457, 462 (9th Cir.1994). The plain language of the rider controls unless "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

Even if one were to consult the legislative history, the portions on which the federal government relies only address the general intent of the legislation. They do not discuss or even mention the "impracticable" language, which sets forth a specific exception or qualification to the general provisions of the rider. Thus, the quoted portions of the legislative history do not shed any light on the meaning of the "impracticable" language or the underlying congressional intent.

Moreover, the court finds nothing inherently contradictory about the general intent and the specific qualification contained in the "impracticable" section of the rider. Federal defendants have thus failed to show that literal application of the statutory language would confound congressional intent.

■ Furthermore, plaintiffs point out that if the rider is construed to prohibit spending to comply with an existing court-ordered deadline, as federal defendants urge, it would be an unconstitutional violation of the separation of powers doctrine. *See Plaut v. Spendthrift Farm, Inc.*, —— U.S. ——, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). Faced with two possible interpretations of a statute, one constitutional and the other unconstitutional, this court is obligated to adopt that which will save the act. *National Labor Relations Board v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 30, 57 S.Ct. 615, 620–21, 81 L.Ed. 893 (1937).[3]

## III. IMPRACTICABILITY

■ Federal defendants next argue that complying with the court order to make a final designation of critical habitat is impracticable because they lack adequate funding.[4] In their opening brief, federal defendants estimated that completing final critical habitat designation for the marbled murrelet would cost roughly $200,000, while they only had $43,000 available. Dec. of Mollie H. Beattie, director of U.S. Fish and Wildlife Service (FWS), at ¶ 5.

When asked by the court to explain and substantiate the $200,000 figure, federal defendants submitted the declaration of John G. Rogers, Jr., acting director of FWS in Ms. Beattie's absence. Mr. Rogers averred that, on further analysis, FWS had concluded that the final determination regarding marbled murrelet habitat would cost about $163,710. Mr. Rogers also provided a breakdown of this amount into its component expenses.

Regarding the issue of availability of funds, Mr. Rogers submitted a further declaration appended to federal defendants' supplemental memorandum submitted on February 1, 1996. Mr. Rogers noted that Congress passed the Balanced Budget Downpayment Act on January 26, 1996. That law provides for an annual listing budget of $750,000. Because the law expires on March 15, 1996, the proportional amount of

---

**3.** Federal defendants respond that the rider simply imposes a moratorium on all final listing activities, including compliance with court orders, through the exercise of congressional appropriations power. Federal defendants assert that such a moratorium does not violate the doctrine of separation of powers.

Given the court's conclusion that the rider clearly does not impose a moratorium where a court order is involved, the court need not reach this question. However, the court is hard pressed to understand how legislation forcing the court to vacate a prior order and to stay the case "pending further direction from the Congress," as federal defendants put it, can be characterized

as anything but an impermissible, unconstitutional congressional intrusion on the judicial power to enforce existing law. *See*, Fed. Dfts' Supp. Memo in Supp. of Mot. to Vacate 7/6/95 Order at p. 14.

**4.** Federal defendants also argue impracticability on the grounds of possible future legislation denying them any budget for listing activities and possible future dislocation of biologists if federal defendants cannot assign them to other projects. These arguments are entirely speculative and cannot form a basis for a finding of impracticability.

the listing budget available before expiration is $100,000. Mr. Rogers indicated at p. 4 that he planned to authorize use of the funds available for listing activities "to complete various notices, rules, and policies pending in the Service's Washington, D.C., office as a result of previous suspensions of the listing programs" and to issue an analysis of prior decisions not to reclassify certain grizzly bear populations as endangered.

In considering the estimates provided by Mr. Rogers as well as the information provided in his supplemental declaration of February 1, 1996, the court is especially mindful of three things. First, federal defendants have the burden of proving impracticability. Reliance on vague, unsupported allegations about estimated expenses is not sufficient. Second, federal defendants have been under court order since November 2, 1993 to complete final designation of marbled murrelet habitat. Third, when federal defendants recently ceased work on the final designation process based on their interpretation of the rider, they had already been working on the project for at least *four years*, and they only had *three and a half months* left before the court-ordered deadline.

The court has carefully examined the various categories of estimated expenses in Mr. Rogers' first declaration. While it is difficult to judge the necessity of each itemized amount, the court notes that the primary expenditures are for staff time and overhead. Presumably these costs would be incurred even if the court were to vacate its order; they would simply be shifted to another agency activity. If that is true, then federal defendants have failed to prove impracticability based on inadequate funding.

Furthermore, the single largest expense listed in Mr. Rogers' declaration is $50,000 for additional economic analysis of the designation of marbled murrelet critical habitat. The need for this additional analysis is allegedly occasioned by new regulatory information received from the state of Washington during the public comment period. According to Mr. Rogers, the revised draft economic analysis will then require review by the FWS, publication, and an opportunity for public comment which must then be ad- dressed in a final economic analysis, to be reviewed again by FWS.

This description of allegedly required additional review is very troubling to the court. For one thing, federal defendants do not explain what newly received state regulatory information is involved or why it should have such a serious potential economic impact on federally managed lands. However, even assuming this possibility, federal defendants had only three and a half months left to complete the critical habitat designation process for the marbled murrelet at the time they planned to commission further study. It is hard to believe that a $50,000 contract for further economic analysis could be completed in that time, much less the ensuing FWS interim review, public notice, comment period, contractor review of comments, completion of final analysis, and FWS final review. The court order establishing January 29, 1996 as the date for final designation of marbled murrelet critical habitat was not merely a suggested target, but a firm mandate. Federal defendants are not at liberty to continue indefinitely studying all of the myriad factors and weighing all of the complex ramifications of designating critical habitat.

Turning to the issue of allocating funds in the listing budget, Mr. Rogers stated in his declaration that some funds were available, but that he had chosen to spend them on unspecified other projects. Again the court finds this decision extremely troubling. Mr. Rogers does not indicate that the listing funds are being allocated to comply with other, pre-existing court orders. He has apparently made a discretionary choice to spend available funds on other agency projects, deliberately ignoring the pending order in this case. This is not an acceptable way of setting priorities, nor does it establish anything but unwillingness to comply with this court's order.

Thus, the court concludes that federal defendants have failed to carry their burden of proving impracticability. Mr. Rogers has attested to the existence of a listing budget with available funds. In the face of an existing court order with a firm deadline, federal defendants do not have the option of favoring

other priorities, nor can they decide after four years that the process of designating critical habitat for the marbled murrelet is too complicated and expensive to complete because they need to embark on new studies.

## IV. CONCLUSION

Federal defendants' motion to vacate this court's Order of July 6, 1995 requiring final critical habitat designation for the marbled murrelet by January 29, 1996 is DENIED. However, given the delay while the motion to vacate was pending, federal defendants shall have an extension until May 15, 1996 to complete the final designation of critical habitat for the marbled murrelet.[5]

5. This deadline is a firm, final date by which federal defendants must make a final designation. The court expects and is confident that federal defendants will properly prioritize the expenditure of current and future appropriations in order to meet their court-ordered obligation.