**Dr. Robin SILVER, et al., Plaintiffs,**

v.

**Bruce BABBITT, et al., Defendants.**

**Dr. Robin SILVER, et al., Plaintiffs,**

v.

**Jack Ward THOMAS, et al., Defendants.**

Nos. CIV 94–337 PHX CAM,
CIV 94–1610 PHX CAM.

United States District Court,
D. Arizona.

May 10, 1995.

Steven Sugarman, Santa Fe, NM, Mark Edward Hughes, Denver, CO, for plaintiffs.

Teri Ronelle Thomsen, U.S. Dept. of Justice, Environmental & Natural Resources Div., Washington, DC, for defendants.

## ORDER

MUECKE, District Judge.

Having reviewed the defendants' motion to vacate the court ordered deadline and Public Law 104–6, the Court concludes as follows:

Defendants have filed a motion to vacate the May 30, 1995 deadline for FWS to provide its final designation of critical habitat by delivering the final rule to the Federal Register. Plaintiffs have responded. Defendants have filed their reply and Plaintiffs have filed a sur-reply.

Defendants first argue that Public Law 104–6 "flatly" prevents them from complying with this court's order to designate habitat by May 30, 1995. Plaintiffs respond that the plain language of the rider establishes that defendants must comply unless "impracticable." In statutory interpretation, courts must adhere to the plain language of a statute unless "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982). In addition, specific provisions in a statutory enactment qualify the general provisions. *Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 439, 112 S.Ct. 1407, 1414, 118 L.Ed.2d 73 (1992).

On April 10, 1995, Public Law 104–6 was signed and became immediately effective. One section of the bill relates to the Fish and Wildlife Service and provides:

DEPARTMENT OF THE INTERIOR
UNITED STATES FISH AND
WILDLIFE SERVICE
RESOURCE MANAGEMENT
(RESCISSION)

Of the funds made available under this heading in Public Law 103–332—

(1) $1,500,000 are rescinded from the amounts available for making determinations whether a species is a threatened or endangered species and whether habitat is critical habitat under the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.); and

(2) none of the remaining funds appropriated under that heading may be made available for making a final determination that a species is threatened or endangered or that habitat constitutes critical habitat (except a final determination that a species previously determined to be endangered is no longer endangered but continues to be threatened).

To the extent that the Endangered Species Act of 1973 has been interpreted or applied in any court order (including an order approving a settlement between the parties to a civil action) to require the making of a determination respecting any number of species or habitats by a date certain, that Act shall not be applied to require that the determination be made by that date if the making of the determination is made impracticable by the rescission made by the preceding sentence.

109 Stat 73, 86.

Relevant to this case, the clear language of the second section of the rider provides that, generally, none of the remaining funds for this year may be used to make a final determination regarding critical habitat. However, the next sentence, the specific provision of the rider, applies to cases in which the ESA "has been interpreted or applied in any court order (including an order approving a settlement between the parties to a civil action) to require the making of a determination respecting any number of species or habitats by a date certain." In such cases, the ESA "shall not be applied to require that the determination be made by that date if the making of the determination is made impracticable by the rescission made by the preceding sentence."

This court has granted judgment on the pleadings to the plaintiffs and has ordered that the final habitat designation be delivered to the Federal Register no later than May 30, 1995. Thus, this lawsuit is clearly an action which requires, by court order, the making of a determination respecting habitat by a date certain. Therefore, the clear language of the rider provides that FWS establish that meeting the deadline is impracticable for it to avoid the court deadline of May 30. Defendants admit that the final designation is not impracticable as a matter of fact. Defendants argue that the final determination is legally impracticable since none of the remaining funds may be used to make a final determination. However, such interpretation would make any final determination impracticable and render the last sentence of the rider meaningless.

Defendants argue that the legislative history should control this court's interpretation of the rider and that the history makes it clear that Congress intended a six month time out on final actions. Plaintiffs respond that the clear language of the rider controls over legislative history. Defendants quote the Joint Explanatory Statement of the Committee of Conference on HR 889, which provides:

Amendment No. 18: Includes a rescission of $1,500,000 as proposed by the Senate of funding available to the Fish and Wildlife Service for activities involving the listing of endangered species and the designation of critical habitat. The provision also prohibits the Fish and Wildlife Service from using other funds to make final listing or critical habitat designations. The House bill contained no similar provision.

The conferees note that this provision has been adopted only to provide a brief "time-out" from the Endangered Species Act listings and critical habitat designations. The managers will review the issues without prejudice. The Endangered Species Act expired in 1992, and its reauthorization is long overdue. The conferees fully expect the appropriations committees to continue their efforts to develop and pass a reauthorization bill.

141 Cong.Rec. H4323, H4328 (daily ed. April 5, 1995) (Joint Explanatory Statement of the Committee of Conference). Defendants also cite Senator Kay Bailey Hutchison as stating that the provision is to provide a "time-out from new listing controversies" so that "silly

things will not happen [sic]." 141 Cong.Rec. S4028, S4034 (daily ed. March 16, 1995).

Initially, the Court notes that it need not refer to legislative history as the language of the rider is clear. *See Westlands Water Dist. v. Natural Resources Defense Council,* 43 F.3d 457, 462 (9th Cir.1994). The court must adhere to the plain language of a statute unless "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *Griffin,* 458 U.S. at 571, 102 S.Ct. at 3250. Defendants have shown that one possible intent of the rider is to provide "a brief time-out from the Endangered Species Act listings and critical habitat designations" to allow examination of the act by Congress. Senator Hutchison does not discuss the second sentence of the rider or the "impracticable" standard.[1] This general intent does not indicate that the specific language of the rider should not be applied or that the specific language would produce a result demonstrably at odds with the intention of drafters. Thus, the Court will adhere to the plain language of the statute.

Defendants also argue that an expenditure of appropriated funds in violation of Public Law 104–6 is a violation of the Anti–Deficiency Act, 31 U.S.C. § 1341, for which there are criminal penalties for officers of the United States who knowingly and wilfully violate it. 31 U.S.C. § 1350. Plaintiffs respond that the Anti–Deficiency Act is irrelevant because the clear language of the Rider allows FWS to continue in this case unless "impracticable." If this Court finds that continuing this action is not "impracticable" and orders compliance with the May 30 deadline, the officials in this case will not have violated the Anti–Deficiency Act, even if a higher court later reverses this Court's holding. *See Clarke v. United States,* 915 F.2d 699, 701 (D.C.Cir.1990); *United States v. Albertini,* 830 F.2d 985 (9th Cir.1987). Thus, plaintiffs correctly argue that defendants will not violate the Anti–Deficiency Act by complying with this Court's order to comply with the May 30 deadline.

Finally, defendants argue that paragraph three applies only to cases involving non-final ESA actions with court-ordered deadlines which the Service may not be able to meet because of the rescission of funding. Plaintiffs respond that the specific language of the last sentence controls over the general language in the preceding paragraph. The key language of the last sentence provides that the ESA need not be applied for a specific court deadline "if the making of the determination is made impracticable by the rescission made by the preceding sentence." The preceding sentence is the sentence that provides that "none of the remaining funds ... may be made available for making a final determination that ... habitat constitutes critical habitat ..." The Court interprets this to mean that a court ordered deadline must be met unless the funding limitation has made the final designation "impracticable." As discussed above, the specific language that applies specifically to this case governs. *Griffin,* 458 U.S. at 571, 102 S.Ct. at 3250. The plain language of the final sentence does *not* limit the "impracticable" determination to only *non-final* determinations. Rather, that sentence specifically refers to the preceding sentence which refers only to *final* determinations.

■ Plaintiffs also argue in their response that this court should interpret the language of the rider to allow the May 30, 1995 deadline to continue in this case to avoid finding the rider to be unconstitutional. Plaintiffs argue that to the extent the above statutory provision overrides this Court's decision, the provision is unconstitutional. While Congress may change the underlying rule of law or modify the jurisdiction of the federal courts, Congress cannot simply reverse an Article III court's order without violating the separation of powers of the Constitution. *Plaut v. Spendthrift Farm,* —— U.S. ——, ——, ——–——, 115 S.Ct. 1447, 1452, 1454–56, 131 L.Ed.2d 328 (1995). Plaintiffs argue that defendants' interpretation would violate separation of powers.

■ Defendants first respond that the rider amends the ESA. Plaintiff correctly re-

---

1. Moreover, the parties do not dispute that they can continue to propose species for listing, de-

spite the fact that the ESA protects proposed species under 16 U.S.C.A. § 1536(a)(4).

plies that there is no substantive amendment in the ESA by the rider. Rather, a review of the rider establishes that it is only a temporary rescission of funding. Defendants also respond that there is no final judgment in this case because the court has retained jurisdiction to supervise the injunction. To support their argument defendants cite *System Fed'n No. 91 v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961) and quote the section of the case that provides that "a continuing decree of an injunction is subject always to adaptation as events shape the need ..." However, the *Wright* case was a case regarding the power of the court to modify a consent decree. It does not hold that a judgment is not final merely because a court retains jurisdiction to make sure the injunction is implemented. *Id.* In this case, the court has granted judgment on the pleadings for the plaintiffs and granted the relief requested by plaintiffs by setting deadlines for FWS to propose and designate habitat for the spotted owl. The judgment is final. Thus, if the Court were to interpret the rider as defendants suggest to vacate the final deadline, the rider would be an unconstitutional violation of separation of powers because it would reverse this Court's decision. If faced with two interpretations one which results in the law being constitutional and one which results in the law being unconstitutional, the court should choose the interpretation that makes the congressional enactment constitutional. *NLRB v. Jones & Laughlin,* 301 U.S. 1, 30, 57 S.Ct. 615, 621, 81 L.Ed. 893 (1937). Thus, to avoid constitutionality problems, the court should adopt plaintiffs' interpretation of the plain language of the statute.

Having decided that this court should interpret the rider's plain language to require that the FWS comply with this court's deadline unless "impracticable," the court must determine whether defendants have established that the May 30 deadline is "impracticable." Because the final regulation deadline is so close, May 30, 1995, and the FWS had already done the majority of the work to designate final habitat, the May 30, 1995 deadline has not been made "impracticable" by the rescission set forth in Public Law 104–6. Defendants admit that the final habitat designation is not impracticable as a factual matter.[2] Thus, under the plain language of the rider, defendants must comply with the May 30, 1995 deadline.

IT IS THEREFORE ORDERED that Defendants' motion to vacate court ordered deadline for designation of critical habitat [filed 4/25/95] is denied. Defendants shall meet the May 30, 1995 deadline for delivering the final habitat designation to the Federal Register.

---

**2.** Defendants argue that it is "impracticable" as a matter of law because of the funding limitation. However, this interpretation would render the final sentence of the rider totally meaningless as every final determination would be impracticable due to funding. In addition, this interpretation would also bring the constitutionality of the rider into question, as already discussed.