**CONSERVATION COUNCIL FOR HAWAI'I, et al., Plaintiffs,**

**v.**

**Bruce BABBITT, Secretary of the Interior, et al., Defendants.**

**No. Civ. 97–00098 ACK.**

United States District Court, D. Hawai'i.

Aug. 10, 1998.

David L. Henkin, Sierra Club Legal Defense Fund, Inc., Honolulu, HI, Michael R. Sherwood, Sierra Club Legal Defense Fund, Inc., San Francisco, CA, for Conservation Council for Hawai'i, Sierra Club, Hawaiian Botanical Society.

Michael Chun, Office of the United States Attorney, Honolulu, HI, Kelly E. Mofield, Environmental and Natural Resources Division, Wildlife and Marine Resources Section, Washington, DC, for Bruce Babbitt, John Rogers.

James K. Mee, Ashford & Wriston, Honolulu, HI, Anne M. Hawkins, Robin L. Rivett, Pacific Legal Foundation, Sacramento, CA, for Hawai'i Forest Industry Association, amicus.

### ORDER SETTING TIMETABLE FOR DETERMINATION OF CRITICAL HABITAT DESIGNATION OR NONDESIGNATION

KAY, Chief Judge.

#### BACKGROUND

This dispute involves the United States Fish and Wildlife Service's ("FWS" or "Service") final rules not designating critical habitats for 245 endangered or threatened Hawaiian plant species under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531 et seq., on the grounds that designation is not prudent. Plaintiffs, including the Sierra Club Legal Defense Fund, for Conservation Council for Hawaii, the Sierra Club, and the Hawaiian Botanical Society, filed this suit challenging these final rules.

On March 9, 1998, the Court issued an order granting Plaintiffs' motion for summary judgment, denying Defendants' motion for summary judgment, and remanding this case to the FWS. The Court held that the FWS, in finding that designation of critical habitats was not prudent, had acted arbitrarily, capriciously, and contrary to law because it had failed to consider all relevant factors. The Court concluded that the case should be remanded to the FWS to reconsider the designation of critical habitats in light of the Court's decision. The Court stated, however, that it "expresses no opinion as to whether or not a critical habitat should be designated for any of the subject species."

At the request of the parties, the Court ordered the parties to submit briefs regarding a timetable for the reconsideration by the

FWS. On April 15, 1998, Defendants submitted a brief regarding the timetable ("Def.Mem."). On May 18, 1998, Plaintiffs filed a response ("Pl.Mem."), and, on June 3, 1998, Defendants filed a reply ("Def.Reply").

## DISCUSSION

### I. Prudency or Designation Determination

■ Before setting a deadline for action, the Court must first resolve the issue of what action is subject to a deadline. Defendants argue that the Court should set a deadline for "prudency" determinations, and defer designation of critical habitats until a later, undetermined date. Plaintiffs argue that the Court should set a deadline for a determination of whether or not to designate critical habitats. In order to resolve this issues the Court must examine the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–44, from which the Defendants' duties originate.

The ESA provides that, "to the maximum extent prudent and determinable," the Secretary of Interior or Commerce ("the Secretary") shall designate a critical habitat concurrently with the determination that a species is endangered or threatened. 16 U.S.C. § 1533(a)(3). Designation of a critical habitat may be postponed for one year, however, if a critical habitat of such species is not yet determinable at the time the species is listed as endangered or threatened. 16 U.S.C. § 1533(b)(6)(C).

The following deadlines are set out by the ESA: To designate a critical habitat, the FWS must first publish notice of the proposed rule in the *Federal Register*, not less than 90 days before the effective date of the rule. 16 U.S.C. § 1533(b)(5)(A). At the same time, the FWS must give actual notice of the proposed regulation to a state agency, give notice to professional scientific organizations, and publish a summary of the proposed rule in a newspaper of general circulation. 16 U.S.C. § 1533(b)(5). The FWS must hold one public hearing if any person so requests within forty-five days after publication of the proposed rule. 16 U.S.C. § 1533(b)(5)(E). Within one year of publishing the proposed rule, the FWS must publish a final rule regarding designation. 16 U.S.C. § 1533(b)(6)(A).

The ESA provides no deadline for a determination of prudency separate from the determination of whether or not to designate a critical habitat. In light of the statutory framework, the Court will set deadlines for the publication of proposed rules designating or not designating critical habitats.

Defendants argue that setting a deadline for a designation/non-designation determination is outside the scope of the Court's review. The Plaintiffs, however, challenged the FWS' determination not to designate critical habitats. The Court's March 9, 1998 Order did not address the designation of critical habitats apart from prudency findings because the FWS had concluded that no designation would be made based on a finding that designation would not be prudent. Thus, the Court may properly set a deadline for the proposal of a designation or non-designation of critical habitats for the subject species.

In addition, the Court notes that to avoid completely its duty to determine a designation or nondesignation of a critical habitat, the FWS would need to demonstrate that such a determination is impossible. "To accept ... [an] indefinite, and virtually open-ended extension of the time for compliance, without a more convincing demonstration of evident impossibility, would be to, in effect, repeal the Congressional mandate." *Sierra Club v. Gorsuch,* 551 F.Supp. 785, 789 (N.D.Cal.1982). The FWS does not argue that it can never decide whether or not to designate a critical habitat, and thus, the Court will impose a deadline for that determination.

### II. Setting of Rulemaking Deadline

#### A. Standard of Reasonableness

■ In setting a timetable for agency action, the Ninth Circuit has instructed courts to follow a standard of reasonableness. *See Environmental Defense Center v. Babbitt,* 73 F.3d 867, 872 (9th Cir.1995); *Environmental Defense Ctr. v. Babbitt,* No. 96–6987, slip op. at 6 (C.D.Cal. Apr. 10, 1997) (Def.Mem., Exh.3).

## B. Parties' Proposals

FWS proposes two alternative timetables for reconsideration ("Option 1" and "Option 2"). Although the FWS presents each timetable with deadlines for "prudency" decisions, not proposed and final rules, these timetables may be informative as guidelines regarding a reasonable time for critical habitat designation or nondesignation. Either option, if chosen, would require the FWS, within 30 days of the Court's order, to publish a notice in the *Federal Register* soliciting new information relevant to the critical habitat inquiry. (Def.Mem., Clark Dec. ¶ 16.) The public would have 60–90 days to provide such information.

Under Option 1, at the start of fiscal year ("FY") 1999, all four of the Pacific Islands Ecoregion ("PIE") Office's listing biologists would begin analyzing available information, and preparing *Federal Register* notices. (Def.Mem., Clark Dec. ¶ 17.) Beginning in February 1999, the FWS would start publishing, in the *Federal Register*, reconsidered decisions as to the "prudency" of critical habitat for each of the 245 Hawaiian plant species. Considering species by ecosystem, the biologists would complete final reconsideration of "prudency" determinations by November 30, 2000. (Def.Mem., Attach.1.) Option 1 amounts to the completion of one "prudency" finding every 2.1 working days. (Def.Mem., Clark Dec. ¶ 20.)

Under Option 2, at the start of FY 1999, two rather than all four of PIE's listing biologists would begin work on "prudency" determinations in the same manner as under Option 1. (Def.Mem., Clark Dec. ¶ 24.) FWS would begin publishing reconsidered decisions in February 1999. Considering species by ecosystem type, all the final reconsidered "prudency" decisions would be finished and published by April 30, 2002. (Def.Mem., Attach.2.) Option 2 amounts to the completion of one "prudency" determination every 3.4 working days. (Def.Mem., Clark Dec. ¶ 24.)

Plaintiffs propose a timetable that requires the FWS to publish proposed critical habitat designations for all 245 Hawaiian plants within 26 months of the Court's timetable order. (Pl.Mem. at 10–11.) In addition, they request that the Court require the FWS to address first those plants most directly affected by federal agency actions, instead of proceeding by ecosystem type. (Pl.Mem. at 13.)

## C. Defendants' Concerns

Defendants argue that they need much time because their resources are limited. The Court appreciates this fact but finds that some of Defendants' justifications for lengthening the time period for agency action are not well-grounded. The Court addresses the FWS' concerns below.

### i. Time Period for Public Comment

■ Defendants argue that a preliminary public comment period, before publishing proposed critical habitat designations or nondesignations, is needed to ensure that the FWS considers the best scientific and commercial information available, as required by 16 U.S.C. § 1533(b)(1)(A). Although one-third of the species at issue were listed within the last two years, two-thirds were listed four or more years ago. (Def. Reply at 7). Defendants argue that a 90 day period for public comment is necessary to update information regarding these species. Defendants further argue that, in accordance with the Court's previous Order, a public notice and comment period would serve an important educational function. Plaintiffs respond that all of the species have been listed within the last seven years, and that the ESA provides ample opportunity for public input after the FWS publishes proposed critical habitat designations.

The ESA specifies that the FWS should receive public comment following the publication of a proposed rule. *See* 16 U.S.C. § 1533(b)(5) (requiring public notice in newspaper of general circulation, notice to professional scientific organizations, and, if requested, a public hearing). While the ESA does not forbid public comment at an earlier stage in the decision-making process, an additional, non-statutory stage in the process should not be used as a justification for contravening the express deadlines provided in the statute. Furthermore, although the Court previously noted that publication of a proposed rule provides education to the public, it is unclear to the Court how the notice the FWS sug-

gests publishing, which is not a proposed rule, would educate the public.

### ii. Economic Analysis

■ The FWS also argues that it requires a substantial amount of time before publishing a proposed rule regarding designation or nondesignation in part because it needs to perform an economic analysis beforehand. The FWS' regulations, however, state that the FWS "shall, *after proposing designation of [a critical habitat],* consider probable economic and other impacts of the designation upon proposed or ongoing activities." 50 C.F.R. § 424.19 (emphasis added). Similar to seeking public comment before publishing a proposed rule, the ESA does not prohibit economic analysis prior to publication of a proposed rule, but this should not be used as a justification for contravening the deadlines specified by the statute.

### iii. Prudency and Designation Determinations

■ The FWS argues that publication of a proposed rule regarding designation or nondesignation of a critical habitat requires much more time than merely determining whether designation is prudent. Plaintiffs argue that the FWS must include the same considerations in a prudency determination as in a proposal for designation or nondesignation. Defendants attach to their reply memorandum a chart describing precisely the additional steps required to publish a proposed rule. (Def. Reply Exh.1). These include developing precise maps and legal descriptions as well as conducting additional research to gather more precise information. In sum, there is no additional consideration required, other than the economic analysis addressed above, but some additional time is necessary to prepare a proposed rule after determining prudency (unless, of course, the FWS concludes that designation is not prudent).

The Court notes that Defendants apparently intend to publish determinations of prudency before publishing proposed rules regarding designation. While the ESA does not prohibit this practice, this additional step should not justify delaying the publication of proposed rules. The FWS may save time and resources by determining prudency when it proposes a designation or nondesignation.

### iv. Resource Limitations

Defendants argue that the FWS is under severe resource pressure due in part to a moratorium on spending in the past, and therefore should be given more time to propose critical habitat designations. Defendants argue that the backlog of listing proposals as well as continuing listing budgetary shortfalls have impaired the agency's ability to complete its ESA duties. For example, Region 1, which includes Hawaii, currently has 86 species that are proposed for listing as endangered or threatened, and 99 species that are candidates for listing. (Def.Mem. Clark Decl. ¶ 14). In addition, they point to the express spending cap on the amount of funds that can be spent on listing actions, including critical habitat. (Def.Mem. at 10.) Thus, Defendants argue that if the FWS must complete prudency determinations for all 245 plants by 2000, it will need to suspend all other listing activity.

■ In response, Plaintiffs note that Defendants' estimate of the listing budget in future years assumes that Congress will not grant Defendants' request for more funds. (Def.Mem., Clark Dec. ¶ 23.) They also note that the Congressional moratorium on final listing decisions expired over two years ago. Furthermore, Plaintiffs argue that Defendants have created the budgetary crisis to justify delay. For example, during FY 1998, Defendants received all $5.19 million that they requested for the listing budget, and did not request more. (Pl.Mem. at 21.) In addition, Defendants requested the FY 1998 spending cap on listing actions. (Pl.Mem. at 21–22.) Defendants explain that they requested a cap to avoid diverting funds from other ESA functions. (Def. Reply at 17).

The Court is mindful of the FWS' limited resources and the need to complete other ESA functions. On the other hand, as one court observed, "To the extent the [agency] feels aggrieved by Congress' failure to allocate proper resources in which to comply with [its] statutory duty, Congress, not the courts, is the proper governmental body to provide ... relief." *Southwest Ctr. for Bio-*

*logical Diversity v. Babbitt,* No. 96–1874, slip. op. at 7 (D.Ariz. Mar. 20, 1997) (rejecting defendant's argument that limited funding justifies delaying designation of critical habitat) (Pl.Mem.Exh. E).

## D. Deadlines and Priorities

█ In light of the above considerations, the Court finds the following to be reasonable deadlines. The FWS shall publish proposed rules regarding designation or nondesignation of 100 of the subject plant species by November 30, 2000, and publish rules regarding the remaining 145 species by April 30, 2002. This presents a compromise between the parties' proposals. These deadlines should permit the FWS to address other ESA matters while at the same time address their statutory duties in this case.

█ Plaintiffs and Defendants disagree regarding the order in which the 245 Hawaiian plant species should be considered for critical habitat designation. Plaintiffs argue that the Service should begin reconsideration of critical habitat for those species most directly affected by federal agency actions. (Pl.Mem. at 13.) This includes more than 50 species threatened by military activity and several plants threatened by federal infrastructure projects. Plaintiffs argue that these two categories would receive the most immediate benefit from critical habitat designation.

Defendants respond by arguing that giving first priority to species threatened by the military and by federal projects would be inefficient and complicate critical habitat designation. (Def.Rep., Clark Dec. ¶ 12.) Defendants point out that the FWS would need to repeatedly revisit habitat types. For example, if the FWS first addressed species threatened by the military, it would have to address 74 species scattered across 8 of the 11 identified Hawaiian habitats. Defendants argue that this would lead to duplication of work. In addition, they point out that their proposed schedule based on ecosystem type is not only more efficient, but would also give high priority to coastal areas, where many of

species threatened by infrastructure projects and the military are located.

The ESA provides no guidance as to the priority that should be given to different species when designating critical habitat, and the Court finds the FWS' approach to be reasonable. Thus, the Court will not impose different priorities on the FWS.[1]

### CONCLUSION

The Court ORDERS the FWS to publish proposed critical habitat designations or nondesignations for at least 100 species by November 30, 2000, and to publish proposed rules for the remaining 145 species that are the subject of this case by April 30, 2002. The Court further ORDERS that, pursuant to 16 U.S.C. § 1533(b)(6)(A), within one year of publication of each proposed critical habitat designation or nondesignation, the FWS shall publish in the *Federal Register* a final rule regarding critical habitat designation or nondesignation for that species.

IT IS SO ORDERED.

---

1. The Court also declines to resolve any dispute regarding when the FWS should begin reconsidering its decisions not to designate critical habitats. The Court is surprised that the FWS did not begin reconsideration following its previous Order in this case, but the Court finds that, as long as the FWS meets its deadlines regarding the completion of the reconsideration of critical habitat designations, the FWS may allocate its resources and prioritize as it wishes.