**CENTER FOR BIOLOGICAL DIVERSITY, et al.,**
**Plaintiffs,**

v.

**Gale NORTON, Secretary of the Department of the Interior, Defendant.**

**No. CV 01–409 TUC DCB.**

United States District Court,
D. Arizona.

Oct. 10, 2003.

Matthew Gilbert Kenna, Kenna & Hickcox PC, Durango, CO, Neil Levine, Denver, CO, for plaintiffs.

Seth M. Barsky, Jason T. Cohen, US Dept of Justice, Wildlife & Marine Resources Section, Washington, DC, for defendant.

## ORDER

BURY, District Judge.

Pending before this Court is Defendant's Motion, filed pursuant to Rule 60(b), Fed.R.Civ.P., to Modify this Court's Order of February 18, 2003. Defendant argues that it should not be required to comply with this Court's Order, and therefore the Endangered Species Act ("ESA"), until such time as Congress appropriates sufficient funds for it to do so. For the reasons set forth below, Defendant's Motion is denied. Alternatively, Defendant seeks an extension of time to comply with this Court's Order filed February 18, 2003. This Court shall permit a limited extension. No further extensions shall be granted.

Also pending before this Court is Plaintiffs' Motion to Hold Defendant in Contempt or, alternatively, Motion for Additional Relief. Because of the limited

extension of time being afforded Defendant for compliance, Plaintiffs' motions are denied as premature.

# I. INTRODUCTION

On January 13, 2003, this Court ordered Defendant to re-designate critical habitat under the ESA for the Mexican spotted owl. *Center for Biological Diversity v. Norton,* 240 F.Supp.2d 1090 (D.Ariz.2003). By subsequent order, the original deadlines were extended to allow the Defendant until October 13, 2003 to re-propose critical habitat and until April 13, 2004 to publish its final designation of critical habitat.

On February 20, 2003, Congress passed an appropriations bill providing Defendant with $9.077 million, with no more than $6.0 million allocated for critical habitat designations. Pub.L. No. 108–7, 117 Stat. 11, 220–21 (Feb. 20, 2003). According to Defendant, the fiscal year 2003 budget, as enacted in February 2003, provided Defendant with insufficient funds to comply with numerous court orders, including the Order of this Court.[1] Additionally, while the budgets for fiscal years 2004 and 2005 have yet to be established, Defendant contends that they too will likely be insufficient.

# II. DISCUSSION

Under Rule 60(b), Fed.R.Civ.P., a party may be relieved from a final judgment under certain enumerated circumstances. Defendant urges this Court to grant such relief on the basis that "it is no longer equitable that the judgment should have prospective application." Rule 60(b)(5), Fed.R.Civ.P. Alternatively, Defendant argues it is entitled to relief under the "catch-all" clause of Rule 60(b) which authorizes relief for "any other reason justifying relief from the operation of the judgment." Rule 60(b)(6), Fed.R.Civ.P. Defendant is not entitled to relief on either basis.

## A. Defendant's Motion is Improper

■ As noted above, on February 18, 2003, this Court granted Defendant's motion to amend judgment, filed pursuant to Rule 59(e), Fed.R.Civ.P. In addressing Defendant's Rule 59(e) motion, this Court rejected Defendant's "too-many-judgments-to-satisfy" argument. Agreeing with the Tenth Circuit Court of Appeals in *New Mexico Cattle Growers v. United States Fish and Wildlife Service,* 248 F.3d 1277(10th Cir.2001), this Court held that "Defendant typically puts off designating critical habitat for endangered and threatened species until forced to do so by court order. *Id.* at 1283 (citing S.Rep. No. 106–126, at 2). Defendant does not get to delay fulfilling its statutory obligations until a court orders it to do so and then seek relief on the basis that it has too many court orders to satisfy. This would essentially reward Defendant for shirking its duties under the ESA." (Document 75: Order filed 2/19/2003 at 2.) This Court has not changed its position in the intervening months.

■ Again, albeit in a more thorough fashion, Defendant raises the identical argument in its present Rule 60 motion. Under the "law of the case doctrine," courts do not "reexamine an issue previously decided by the same or higher court in the same case." *Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone,*

---

1. Including the order of this Court, Defendant proposes "deferring" until fiscal year 2004, compliance with 13 court-ordered critical habitat actions. Press Release, U.S. Fish and Wildlife Service, *Status of Court–Ordered Critical Habitat Actions,* (May 2003), *available at* http:// endangered.fws.gov/criticalhabitat/chactions.pdf. In other words, Defendant plans to "defer" critical habitat designations for 18 endangered or threatened species. *Id.*

*Inc.,* 275 F.3d 762, 766 (9th Cir.2001). There are only five possible exceptions to the doctrine: (1) the first decision was clearly erroneous; (2) there has been an intervening change of law; (3) the evidence is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result. *United States v. Alexander,* 106 F.3d 874, 876 (9th Cir.1997). Absent one of the above exceptions, failure to apply the law of the case is an abuse of discretion. *Id.*

Here, this Court has already decided that Defendant's budgetary constraints and numerous adverse judgments do not relieve it from obeying this Court's order and complying with the ESA. That decision was not clearly erroneous; there has been no intervening change of law; the evidence presented by Defendant is not substantially different, only more voluminous; no other changed circumstances exist; and it is not a manifest injustice to require Defendant to properly and timely perform its statutorily-mandated duties under the ESA. Accordingly, Defendant's present Rule 60 motion is barred by the law of the case doctrine.

■■ As previously stated, Defendant's present Rule 60 motion is, for all intents and purposes, identical to its previous Rule 59 motion. It is not the proper function of a Rule 60(b) motion to reargue matters that have already been litigated. See *Crateo v. Intermark, Inc.,* 536 F.2d 862, 870 n. 15 (9th Cir.1976); *Taylor v. Knapp,* 871 F.2d 803, 805 (9th Cir.1989). Moreover, relief from a court order should not be granted merely because a party finds it inconvenient to live with the terms of the order. *Securities and Exchange Commission v. Coldicutt,* 258 F.3d 939, 942 (9th Cir.2001). Therefore, Defendant's present Rule 60 motion is denied as improper.

**B. Defendant Is Not Entitled to Equitable Relief**

■■ According to the United States Supreme Court, "when federal statutes are violated, the test for determining if equitable relief is appropriate is whether an injunction is necessary to effectuate the congressional purpose behind the statute." *Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1177 (9th Cir.2002) (citing *TVA v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). In *TVA,* the Supreme Court was faced with a violation of Section 7 of the ESA but did not balance the equities. *Id.* (citing *TVA,* 437 U.S. at 193–95, 98 S.Ct. 2279). Rather, "the Court ruled that effectuating Congress' clear intent required issuance of an injunction, regardless of the equities involved." *Id.* (citing *TVA, id.*) Thus, under the holding of *TVA,* "the clear objectives and language of Congress in passing the ESA removed the traditional discretion of courts in balancing the equities before granting injunctive relief." *Id.* "Congress has spoken in the plainest of words, making it abundantly clear that the balance [of equities] has been struck in favor of affording endangered species the highest of priorities." *TVA,* 437 U.S. at 194, 98 S.Ct. 2279.

As the Ninth Circuit has noted, since Congress viewed jeopardizing the continued existence of endangered species as threatening incalculable harm, "it decided that the balance of hardships and the public interest tip heavily in favor of endangered species." *Sierra Club v. Marsh,* 816 F.2d 1376, 1383 (9th Cir.1987) (citing *TVA,* 437 U.S. at 187–88, 98 S.Ct. 2279). Accordingly, courts "may not use equity's scales to strike a different balance." *Id.*

Granted, even under the limited discretion vested in courts in ESA litigation, the Ninth Circuit acknowledged in *Marsh* that injunctive relief may be appropriate in

"rare or unusual circumstances." *Id.* at 1384 n. 11. The only Ninth Circuit decision to lift an injunctive order against the FWS for failure to comply with the ESA is *Environmental Defense Center v. Babbitt,* 73 F.3d 867 (9th Cir.1995). There, the court found that the congressional appropriation rider that imposed a moratorium on using funds for making final determinations that a species was endangered or threatened prevented the FWS from complying. *Id.* at 871 ("[The rider] necessarily restrict[s] the Secretary's ability to comply with his duty by denying him funding."). The court noted that absent the rider, the plaintiff would have prevailed in its "suit to compel the Secretary to make and publish a final determination." *Id.* at 869. Certainly, a complete moratorium on funding falls within the "rare or unusual circumstances" exception carved out by *Marsh* and explains the decision in *Environmental Defense Center* to grant FWS's requested relief.

The situation in this case is rather different. Here, Defendant does have funds at its disposal to comply with this Court's Order; they are merely "insufficient." Accordingly, this case is no different from the number of other cases from this Circuit where the FWS was required to abide by court-ordered compliance with the ESA, despite insufficient funds with which to do so. *See Biodiversity Legal Foundation v. Badgley,* 1999 WL 1042567 (D.Or.1999),

*rev'd on other grounds,* 309 F.3d 1166 (9th Cir.2002); *Marbled Murrelet v. Babbitt,* 918 F.Supp. 318 (W.D.Wash.1996); *Silver v. Babbitt,* 924 F.Supp. 972 (D.Ariz.1995). Unlike *Environmental Defense Center* where absolutely no money was available to permit compliance with a court order, Defendant here does have appropriated funds, albeit limited in amount. Budgetary constraints, far from being exceptional, are an everyday reality.[2]

As other district courts within this Circuit have noted, "[t]o the extent the [FWS] feels aggrieved by Congress' failure to allocate proper resources in which to comply with [its] statutory duty, Congress, not the courts, is the proper governmental body to provide relief." *Conservation Council for Hawai'i v. Babbitt,* 24 F.Supp.2d 1074, 1078–79 (D.Hawai'i 1998) (quoting *Southwest Center for Biological Diversity v. Babbitt,* No. 96–1874, slip op. at 7 (D.Ariz. Mar.20, 1997)). Put another way, "[t]he solution of being over-obligated and underfunded rests with Congress, and not with the Court." *Butte Environmental Council v. White,* 145 F.Supp.2d 1180, 1185 (E.D.Cal.2001) (quoting *Center for Biological Diversity v. Babbitt,* No. C–99–3202, slip op. at 19 (N.D.Cal.2000)). The Court notes that Defendant has not requested supplemental funding from Congress to address her need to comply with court ordered critical habitat designations.

---

**2.** Indeed, only 10 days after the moratorium was lifted, the district court on remand ordered the Secretary to list the red-legged frog within 14 days. *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1188–89 (10th Cir.1999) (citing *Environmental Defense Center v. Babbitt,* CV–95–2867–R (C.D.Cal. May 6, 1996) (unreported order)). Thus, absent the moratorium, Defendant was required to comply with the ESA, regardless of the adequacy of its resources.

As explained by the Tenth Circuit:
We distinguish the present circumstances from those in effect during the moratorium.

While the express congressional moratorium was in effect, that congressional enactment constituted an express suspension of the Secretary's listing responsibilities under the ESA. However, once the moratorium expired, the Secretary can no longer point to any extant legislation expressly modifying his duties under the ESA.
*Id.* at 1192 n. 20.

The present circumstances in this case are equally distinguishable from those in effect during the moratorium.

"[T]he mandatory language of the ESA does not support [D]efendant['s] suggestion that the ESA allows the Secretary to comply with statutory duties at his or her convenience, or that a heavy workload of the agency may excuse compliance." *Id.* (citing 16 U.S.C. § 1533(b)(6)(C)).

Moreover, if the appropriations bill in this case is construed as Defendant urges, "to prohibit spending to comply with an existing court-ordered deadline ... it would be an unconstitutional violation of the separation of powers doctrine." *Marbled Murrelet*, 918 F.Supp. at 321 (citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995)); *see also Silver*, 924 F.Supp. at 976 ("Thus, if the Court were to interpret the rider as defendants suggest to vacate the final deadline, the rider would be an unconstitutional violation of separation of powers because it would reverse this Court's decision"). Essentially, if this case is stayed pending further legislation from Congress, this Court's Order cannot be enforced without the consent of Congress. Worse yet, Defendant argues that if and when Congress finalizes the budgets for fiscal years 2004 and 2005, this case should remain stayed until such time as Defendant is of the opinion that it has sufficient funds to comply with its statutorily-mandated and court-ordered duties. Defendant's argument "can [not] be characterized as anything but an impermissible, unconstitutional ... intrusion on the judicial power to enforce existing law." *Marbled Murrelet*, 918 F.Supp. at 321 n. 3.

■ In short, regardless of budgetary constraints, Defendant shall comply with the deadlines set by this Court. Defendant may not avoid its mandatory duties under the ESA "on the grounds that the budget and staff of the Department of Interior are inadequate." *Loudner v. United States*, 108 F.3d 896, 903 n. 7 (8th Cir.1997). As explained by the Eighth

Circuit, "the United States may not evade the law simply by failing to appropriate enough money to comply with it." *Id.*

■ Defendant's argument that requiring it to abide by this Court's order would violate the Anti–Deficiency Act, 31 U.S.C. § 1341, is unavailing. According to the Comptroller General of the United States, "a judicial or quasi-judicial judgment or award does not involve a deficiency created by an administrative officer." 63 Op. Comp. Gen. 308, *11 (1984) (quoting 1 Op. Comp. Gen. 540, 541 (1922)) (internal quotation marks omitted). Therefore, according to the Comptroller General, "such an award would not be viewed as violating the Antideficiency (sic) Act." *Id.* (citation omitted); *see Clarke v. United States*, 915 F.2d 699, 701 (D.C.Cir.1990) (finding that the existence of a judgment would be a complete defense to prosecution under the Anti–Deficiency Act, although there has never been a prosecution under the Act). Therefore, Defendant's argument regarding the Anti–Deficiency Act ignores the fact that in order to comply with the Anti–Deficiency Act, Defendant must be permitted to continue its ongoing 10–year violation of the ESA.

### C. Plaintiff's Request for Order of Contempt

■ In order to find Defendant in civil contempt Plaintiffs have "the burden of showing by clear and convincing evidence that [Defendant] violated a specific and definite order of the court." *Federal Trade Commission v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir.1999). Plaintiffs have met their burden. In its Rule 60 motion, Defendant candidly admits that it has not conducted "any work on the [Mexican spotted owl] critical habitat designation this fiscal year." (Defendant's Motion, p. 20) Defendant does not anticipate conducting any such work until per-

haps fiscal years 2004 or 2005. In fact, Defendant declares that it will not issue the proposed critical habitat designation for the Mexican spotted owl until 3 months after Congress appropriates funds Defendant deems adequate. (*Id.* at 20–21) In short, Defendant unequivocally assures this Court that it will not comply with the October 13, 2004 deadline for proposing critical habitat. Unless this Court grants Defendant an extension of time to comply, Defendant is in contempt of this Court's Orders filed January 13, 2003 and February 18, 2003.

The only reason offered by Defendant for her contempt of this Court's Order is FWS's tight budget. As has been thoroughly explained by this Court, Defendant's budgetary woes do not relieve FWS of its express statutory duty under the ESA.[3]

Regardless of Defendant's financial woes, this Court cannot ignore the incredible amount of time that has been spent compelling Defendant to properly perform her duties under the ESA. The Mexican spotted owl has been designated a threatened species under the ESA since March 16, 1993. 58 Fed.Reg. 14248. "The Secretary, to the maximum extent prudent and determinable, shall, *concurrently* with making a determination [that a species is endangered or threatened] designate any habitat of such species which is then considered to be critical habitat." 16 U.S.C. § 1533(a)(3) (emphasis added). Defendant has had ten years to comply with the ESA mandate to designate critical habitat. Thus far Defendant has refused to do so.

Defendant blames the courts and overly-litigious plaintiffs for her present budgetary problems, which allegedly render it impossible for Defendant to comply with this Court's order. See Press Release, U.S. Dept. of the Interior, *Endangered Species Act "Broken"—Flood of Litigation Over Critical Habitat Hinders Species Conservation* (May 28, 2003), *available at* http://endangered.fws.gov/criticalhabitat/ch _pressrelease.pdf. Defendant knows that plaintiffs only utilize powers intentionally bestowed upon them by Congress through the citizen suit provision. 16 U.S.C. § 1540(g). There was nothing which required Congress to make citizen suits available under the ESA. Rather, it did so to further the purpose of the ESA, the conservation of endangered and threatened species. See *Marbled Murrelet v. Babbitt,* 83 F.3d 1060, 1064 (9th Cir.1996). Congress saw fit to allow enforcement of the ESA through citizen suits, therefore, Defendant's cannot blame the system created by Congress to oversee compliance

---

**3.** The treatment given to Defendant's "inadequate resources argument" by the U.S. District Court for the District of New Mexico is representative of the consensus reached by every court to which the argument has been presented.

Defendants' request for reconsideration and a stay must be denied. Defendants' budget and administration problems amount to no more than the "inadequate resource argument" previously denied by the Tenth Circuit Court of Appeals in *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1192 (10th Cir. 1999). Budget and administration issues are to be addressed by Defendants and are no part of my decision requiring Defendants to formulate a legally sufficient desig-

nation of critical habitat for the silvery minnow. *Id.* The mandatory duty the ESA places upon Defendants to undertake this designation promptly is not altered because Defendants first designated critical habitat incorrectly. *Id.* In other words, the "inadequate resources argument" does not relieve the Secretary "of his non-discretionary duties under the ESA." *Id.*

*Middle Rio Grande Conservancy District v. Babbitt,* 206 F.Supp.2d 1156, 1195 (D.N.M. 2000), *aff'd sub nom. Middle Rio Grande Conservancy District v. Norton,* 294 F.3d 1220 (10th Cir.2002); *but see Center for Biological Diversity v. United States Fish and Wildlife Service,* No. C 01–0352 SI (N.D.Cal. Sept. 29, 2003) (unreported order).

with the ESA. Congress vested citizens with this authority and it is up to Congress to withdraw it. Until such time, suits such as this one are authorized.

■ Defendant's dismissive attitude toward the Endangered Species Act in general, and designation of critical habitat in particular, created Defendant's current predicament. Defendant openly and unabashedly views designating critical habitat as a "low priority" that "provides little conservation benefit to species." Press Release, U.S. Fish and Wildlife Service, *Critical Habitat—Questions and Answers* (May 2003), *available at* http:// endangered.fws.gov/criticalhabitat/CH_qanda. pdf. However, when the ESA was enacted in 1976, Congress believed that designating critical habitat was "[o]f equal or more importance" than simply classifying a species as either threatened or endangered. H.R.Rep. No. 94–887, at 3 (1976). According to Congress, "the ultimate effectiveness of the Endangered Species Act will depend on the designation of critical habitats." *Id.* The opinion of Congress regarding the importance of critical habitat to the preservation of threatened and endangered species has not changed in the intervening years. See, *e.g.,* S.Rep. No. 106–126 (1999).[4]

Likewise, federal case law is replete with decisions emphasizing the importance of critical habitat to the success of the ESA. See, *e.g., TVA v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978); *Natural Resources Defense Council v. United States Department of the Interior,* 113 F.3d 1121 (9th Cir.1997); *New Mexico Cattle Growers v. United States Fish and Wildlife Service,* 248 F.3d 1277 (10th Cir. 2001).

If Defendant truly believes that designating critical habitat actually "hinders species conservation," obstinate defiance of the ESA is not the remedy. Rather, appealing to Congress, armed with evidence, would be the proper method for effecting the change Defendant apparently believes is necessary for the preservation of threatened and endangered species. Unless and until Congress decides that designating critical habitat is unnecessary, Defendant is legally required to comply with the ESA, whether she agrees with it or not. Until then, this Court will act to enforce the ESA under such circumstances as those presented here.

## III. CONCLUSION

Ten years have passed since the Mexican spotted owl was listed as a threatened species. Defendant has spent the past ten years thwarting the stated purpose of the ESA by refusing to designate critical habitat for the owl. Defendant has been ordered time and time again by court after court to comply with the critical habitat requirements of the ESA for the Mexican spotted owl. See *Center for Biological Diversity,* 240 F.Supp.2d at 1091–96. Instead of complying, however, Defendant has repeatedly sought to further delay compliance with the ESA with the same

---

4. Congress' refusal to appropriate adequate funding for enforcement of ESA is not a reversal of the public policy that supported its adoption of ESA. Its refusal to appropriate funds is simply politics, not public policy. This distinction emphasizes the principles behind the doctrine of the separation of powers between the judiciary and the legislature. The judiciary enforces the law adopted by Congress regardless of the politics of the moment. If Congress chooses to do away with ESA or amend the citizen suit provision that encourages the type of litigation seen here, it has the power to do so. Until then, Defendant must comply with ESA. An Order to the contrary would suspend or repeal ESA by implication. "Repeals (or suspensions) of legislation by implication are disfavored, especially 'when the claimed repeal rests solely on an Appropriations Act.'" *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1192 (10th Cir. 1999).

argument—inadequate resources. Without exception, every court presented with Defendant's argument, absent a moratorium, has dismissed it. Nonetheless, despite the clear message from the courts that Defendant's "inadequate resources argument" lacks merit, Defendant continues in non-compliance with the ESA. Defendant is not entitled to any additional time to do what should have been done a decade ago.

Defendant is reminded that the basis upon which this Court rejected Defendant's prior designation of critical habitat was extremely narrow. Specifically, Defendant decided to exclude from its final designation of critical habitat approximately 70 percent of the lands included as critical habitat in its proposed designation. *Id.* at 1093–94. This Court's ruling did not disturb the remaining 30 percent of the Defendant's critical habitat designation.

Defendant excluded the following lands from the final critical habitat designation: Forest Service lands and Native American lands of the Navajo Nation, Mescalero Apache, White Mountain Apache, Jicarilla Apache, and the San Carlos Apache. With the exception of the San Carlos Apache land, Defendant premised her decision to exclude the lands upon her belief that "critical habitat" by definition did not include lands with adequate management or protection already in place. *Id.* at 1093. It was Defendant's interpretation of the term "critical habitat" that this Court found to be arbitrary and capricious. *Id.* at 1098–1100.

Defendant has already proceeded through the Final Rule making phase of her designation of critical habitat for the Mexican spotted owl. Accordingly, the best scientific and commercial data available has been compiled, public comment has been solicited, reviewed, assessed and addressed as recently as February 1, 2001. But for her erroneous critical habitat defi-

nition, the excluded lands would have been included in the final rule designating critical habitat for the Mexican spotted owl that was issued on February 1, 2001. There is no need for any further rule-making activities prior to publication of the final rule designating habitat in relation to the following: Forest Service land and the lands of the Navajo Nation, Mescalero Apache, White Mountain Apache, Jicarilla Apache.

The same applies to Defendant's exclusion of unoccupied Forest Service areas. Defendant's exclusion of the land within the San Carlos Apache reservation was, however, made on a different basis. Defendant found that the San Carlos Apache Management plan protected the Mexican spotted owl and that the benefit of maintaining a good working relationship with the Tribe outweighed the benefit to the Mexican spotted owl from designating those lands as critical habitat. *Id.* at 1105. While this Court held that this was a legitimate basis for excluding the lands of the San Carlos Apache, this Court nonetheless held it was impermissible because Defendant failed to provide for review of and public comment on the San Carlos Apache management plan. *Id.* at 1105–08. As the benefit analysis was made in relation to the management plan, public comment and public hearings were required. Accordingly, the only public comment necessary prior to publishing the final rule to designate critical habitat for the Mexican spotted owl relates to Defendant's decision not to designate critical habitat on the San Carlos Apache lands.

In short, designation can occur forthwith.

In light of the above clarification, this Court is confident that designation of critical habitat for the Mexican spotted owl can be done immediately and that it need not involve a large expenditure of Defendant's

budget. The parties shall meet and confer regarding the remaining steps necessary for publication of the Final Rule designating critical habitat for the Mexican spotted owl. This Court anticipates a very narrow and abbreviated rule-making procedure, to be conducted on an expedited basis. This Court has the utmost confidence in the parties' ability to present a reasonable schedule for the designation of critical habitat in this case. In setting a timetable for agency action, the Ninth Circuit has instructed courts to follow a standard of reasonableness. *Environmental Defense Center v. Babbitt,* 73 F.3d 867, 872 (9th Cir.1995).

The Court shall grant Defendant a very limited extension of time to comply with its Orders of January 13, 2003 and February 18, 2003. Therefore, Plaintiff's request to hold Defendant in contempt is premature, and Plaintiff's request for additional relief is premature. Defendant is advised that no further extensions shall be granted. In the event critical habitat is not expeditiously designated, Plaintiff may reurge its request for a blanket injunction against the approval or authorization of projects that may impact the Mexican spotted owl until critical habitat is properly designated or reurge its request that this Court direct Defendant to treat the lands at issue here as critical habitat for the Mexican spotted owl.

Accordingly,

**IT IS ORDERED:**

1. Defendant's "Rule 60(b) Motion to Modify February 18, 2003 Order" (document 90) is **DENIED** in all respects, except to the extent Defendant seeks additional time to designate critical habitat for the Mexican spotted owl. The additional time granted Defendant shall be limited. No further extensions shall be granted.

2. Plaintiffs' "Motion to Hold Defendant in Civil Contempt or, Alternatively, Motion for Additional Relief" (document 100) is **DENIED** as premature.

3. Defendant's Motion to Stay ruling on Plaintiff's Motion for Contempt is **DENIED**.

4. The parties shall meet and confer within 15 days of the filing date of this Order to prepare a reasonable timeline for compliance with this Court's Order filed January 13, 2003. The parties shall prepare a schedule identifying the necessary steps remaining to complete the final designation of critical habitat for the Mexican spotted owl. The parties shall submit a detailed work plan that includes the time needed to complete each step and dates for completing each specific task, resulting in an estimate of the total time it will take for Defendant to fully comply with this Court's January 13, 2003, Order. The parties shall propose a reasonable means of tracking Defendant's progress, including status reports to be filed with this Court. Defendant shall propose a reasonable date for her to begin the process of designating critical habitat. Any matters that cannot be stipulated to shall be designated as disputed and both sides shall set forth their positions in a jointly filed memorandum to this Court. This Court shall forthwith resolve any disputes.

5. The proposed timeline and the memorandum of dispute, if one is necessary, shall be filed with this Court within 20 days of the filing date of this Order. No further briefing shall be made without leave of this Court. The matter of Defendant's compliance with this Court's Order of January 13, 2003, shall be deemed submitted, and this Court shall issue a reasonable deadline for full compliance, with no further extensions to be granted.

6. Prior to designation of critical habitat, any request for a stay of Defendant's approval or authorization of any project that may impact the Mexican spotted owl

shall be considered by this Court on a case by case basis, and expedited as necessary.