**AUDUBON SOCIETY OF PORTLAND,**
**et al., Plaintiffs,**

v.

**Sally JEWELL, Secretary of United**
**States Department of Interior,**
**et al., Defendants.**

**No. 1:14–cv–0675–CL.**

United States District Court,
D. Oregon,
Medford Division.

Signed April 15, 2015.

Christopher G. Winter, Maura C. Fahey, Portland, OR, for Plaintiff.

Romney S. Philpott, III, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER

PANNER, District Judge:

Magistrate Judge Mark D. Clarke filed a Report and Recommendation, and the matter is now before this court. *See* 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72(b). Because Defendants object to the Report and Recommendation, I have reviewed this matter *de novo.* 28 U.S.C. § 636(b)(1)(C); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981).

I agree with the Report and Recommendation that Defendants 1–ORDER should finalize and approve a Comprehensive

Conservation Plan no later than August 1, 2016.

## CONCLUSION

Magistrate Judge Clarke's Report and Recommendation (# 29) is adopted. Plaintiffs' motion for summary judgment (# 19) is grant and Defendants' motion (# 20) is denied. Plaintiffs are to submit a proposed form of judgment within 14 days from the date of this order.

IT IS SO ORDERED.

## REPORT & RECOMMENDATION

CLARKE, United States Magistrate Judge.

This case comes before the Court on cross motions for summary judgment by the Plaintiffs (# 19) and the defendants (# 20). The parties agree that the defendant United States Fish and Wildlife Service ("FWS") failed to meet the congressional deadline for preparation of a Comprehensive Conservation Plan ("CCP") by October 9, 2012, for five National Wildlife Refuges (NWR) in the Klamath Basin Complex, and on August 18, 2014, the Court issued an Order to that effect (Dkt.# 14). Therefore, the only issue remaining for the Court is the nature of the remedy to be ordered. Plaintiffs request that the defendants be ordered to complete a CCP for the Klamath Complex by August 1, 2016. Defendants oppose this request, asserting that the CCP cannot be completed before October 18, 2017. For the reasons below, Plaintiff's motion (# 19) should be GRANTED, and the defendants' motion (# 20) should be DENIED.

## REGULATORY BACKGROUND

The National Wildlife Refuge System Administration Act ("Refuge Act") was passed by Congress with the purpose to set aside lands designated as wildlife refuges for "the conservation, management, and where appropriate, restoration, of the fish, wildlife, and plant resources and their habitats within the United States for the benefit of present and future generations of Americans." 16 U.S.C. § 668dd(a)(2). In 1997, Congress passed and President Clinton signed the National Wildlife Refuge System Improvement Act, which amended the Refuge Act. *Id.* § 668dd(e)(1)(B). More specifically, the amendments required the U.S. Fish and Wildlife Service to prepare and implement a Comprehensive Conservation Plan for each unit of the National Wildlife Refuge system "within 15 years after the date of enactment of the National Wildlife Refuge System Improvement Act of 1997 [enacted October 9, 1997]." *Id.* These amendments are intended to "ensure that the biological integrity, diversity, and health of the system are protected." 143 Cong. Rec. H3225 (daily ed. June 3, 1997) (statement of Rep. Miller). The CCPs were therefore due to be completed by October 9, 2012.

A Comprehensive Conservation Plan is a "document that describes the desired future conditions of a refuge or planning unit and provides long-range guidance and management direction to achieve the purposes of the refuge." 50 C.F.R. § 25.12 (2014). A CCP is intended to "maintain and, where appropriate, restore the ecological integrity of each refuge and the Refuge System." *Id.* A compatible use is defined as a use that "will not materially interfere with or detract from the fulfillment of the National Wildlife Refuge System mission or the purpose(s) of the national wildlife refuge." 50 C.F.R. § 25.12.

## LEGAL STANDARD

■ As a general matter, district courts are empowered by the APA to review agency action, and have federal question

jurisdiction over such claims pursuant to 28 U.S.C. § 1331. For a court to review agency action pursuant to the APA, there must be "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "Agency action" also includes a "failure to act." 5 U.S.C. § 551(13).

In a "failure to act" case, a court can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Judicial review is appropriate if the plaintiff makes a showing of "agency recalcitrance ... in the face of clear statutory duty or ... of such a magnitude that it amounts to an abdication of statutory responsibility." *ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1137 (9th Cir.1998) (citation and quotation omitted). In *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004), the Supreme Court explained that a "failure to act" within the meaning of the APA is the failure of the agency to issue an "agency rule, order, license, sanction or relief." *Id.* at 62, 124 S.Ct. 2373. That is, judicial review of a failure to act under § 706(1) "is properly understood to be limited ... to a discrete action" such as "the failure to promulgate a rule or take some decision by a statutory deadline." *Id.* at 63, 124 S.Ct. 2373.

The sole remedy available under § 706(1) is for the court to "compel agency action," such as by issuing an order requiring the agency to act, without directing the substantive content of the decision. Thus, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Id.* at 64, 124 S.Ct. 2373. In determining the appropriate timeline for agency action, the Ninth Circuit has instructed district courts to follow a standard of reasonableness. *Envtl. Def. Ctr. v. Babbitt*, 73 F.3d 867, 872 (9th Cir.

1995); *see also Ctr. for Biological Diversity v. Norton*, 304 F.Supp.2d 1174, 1184 (D.Ariz.2003).

## DISCUSSION

First, the Court notes that the injunctive relief factors set out in *Monsanto v. Geertson Seed*, 561 U.S. 139, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010) are not applicable here because the defendants have conceded, and the Court has ordered, that FWS violated a mandatory and non-discretionary deadline, thus the task for the Court is not to determine *whether* an injunction should issue, but what the timeline on that injunction should be.

The defendants assert that the timeline proposed by FWS to complete the project is entitled to deference by the Court. However, the Ninth Circuit has held that district courts should not "improperly conflate [ ] deference in the context of judicial review of an agency decision, with deference in consideration of the equities after a violation of law has been found." *Sierra Forest Legacy v. Sherman*, 646 F.3d 1161, 1185 (9th Cir.2011) (internal citations omitted). "If the federal government's experts were always entitled to deference concerning the equities of an injunction, substantive relief against federal government policies would be nearly unattainable, as government experts will likely attest that the public interest favors the federal government's preferred policy, regardless of procedural failures." *Id.; see also Seattle Audubon Soc'y v. Evans*, 952 F.2d 297, 302 (9th Cir.1991) (holding that district court's remedy order, which did not give deference to the agency, was not an abuse of discretion).

Defendants have identified all of the remaining necessary tasks to complete and approve a final CCP and Environmental Impact Statement ("EIS"), and they

propose a date of completion of October 18, 2017. Undoubtedly, many of the tasks and issues to be addressed within each refuge are complex and controversial—the defendants note they have received a variety of conflicting comments regarding concerns such as agricultural management, waterfowl and wildlife management, water availability, use, and delivery, endangered species habitat management, public access and recreational use, restoration and enhancement of wetlands, and many others. Nevertheless, the defendants admit that the preplanning for the CCP for the Complex began in 2008, and scoping began in 2010. Public scoping meetings were held in May, 2010, comments were received, and a public scoping summary report was prepared in December, 2010. Meanwhile, FWS began preparing rough drafts of the CCP, but the process was disrupted by other projects, developments that affected the underlying issues in the Complex, and administrative complications, such as significant personnel turnover within FWS.

Plaintiffs' Exhibit 1 (# 19-1) demonstrates that the agency has consistently projected this CCP to take three years from beginning to completion. The Court is sensitive to the fact that there have been challenges and delays along the way, resulting in the final date being pushed out later and later on several occasions. However, it is unclear to the Court why, after all the work that FWS claims has already been done, FWS continues to need an additional three full years to finalize and approve the CCP at issue. Plaintiffs point out that, while the defendants' proposed timeline is "based upon FWS's concrete mapping out of the remaining tasks and the time necessary to finish the CCP/EIS," and the timeline includes estimates of the number of months required to complete each task, there is no indication of how FWS came up with those estimates. Also, as recently as May, 2014, a project manag-

er estimated that a "complete internal administrative draft" could reasonably be done by the end of September, 2014—or four months from the date of the estimate. Ex. 8 (# 19-8). FWS now estimates that completion of an internal administrative draft will take seven months, or nine with editing and formatting. The Court agrees with the Plaintiffs that the numbers now provided by FWS seem arbitrary, and they conflict with the agency's prior timelines for the project.

Setting a date of August 1, 2016 gives FWS nearly eight years from the beginning of the planning process, and nearly four years from the non-discretionary deadline mandated by Congress to finalize and approve a CCP for the Klamath Complex. While the defendants have indicated that resources and lack of personnel continue to be a challenge for FWS, they have not indicated that it has any other pending actions that are of a higher or competing priority. As consistently indicated by FWS timelines throughout the process, this is a reasonable amount of time to complete even a complicated and potentially controversial CCP.

## RECOMMENDATION

For the reasons stated above, Plaintiffs' motion (# 19) should be GRANTED and defendants' motion (# 20) should be DENIED. Defendants should be ordered to finalize and approve a Comprehensive Conservation Plan for the Lower Klamath, Upper Klamath, Tule Lake, Clear Lake, and Bear Valley National Wildlife Refuges on or before August 1, 2016.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the dis-

trict court's judgment or appealable order. The Report and Recommendation will be referred to a district judge. Objections to this Report and Recommendation, if any, are due within fourteen (14) days. If objections are filed, any response is due within fourteen (14) days of the date of the objections. See FED.R.CIV.P. 72, 6.

Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).

Filed March 5, 2015.